*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 4, 2014                    518336
_____

THE PEOPLE OF THE STATE OF
    NEW YORK ex rel. THE
    NONHUMAN RIGHTS PROJECT,
    INC., on Behalf of TOMMY,
                        Appellant,
         v                                    OPINION AND ORDER

PATRICK C. LAVERY, Individually
    and as an Officer of Circle
    L Trailer Sales, Inc., et
    al.,
                    Respondents.
_____

Calendar Date:  October 8, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Lynch, JJ.

_____

        Elizabeth Stein, New Hyde Park, and Steven M. Wise,
admitted pro hac vice, Coral Springs, Florida, for appellant.

_____

Peters, P.J.

        Appeal from a judgment of the Supreme Court (J. Sise, J.),
entered December 18, 2013 in Fulton County, which denied
petitioner's application for an order to show cause to commence a
CPLR article 70 proceeding.

        The subject of this litigation is a chimpanzee, known as
Tommy, that is presently being kept by respondents on their
property in the City of Gloversville, Fulton County.  On behalf
of Tommy, petitioner sought an order to show cause to commence a
habeas corpus proceeding pursuant to CPLR article 70 on the
ground that Tommy was being unlawfully detained by respondents.

In support, petitioner submitted the affidavits of several experts in an effort to establish that, in general, chimpanzees have attributes sufficient to consider them "persons" for the purposes of their interest in personal autonomy and freedom from unlawful detention. Collectively, these submissions maintain that chimpanzees exhibit highly complex cognitive functions — such as autonomy, self-awareness and self-determination, among others — similar to those possessed by human beings. Following an ex parte hearing, Supreme Court found that the term "person" under CPLR article 70 did not include chimpanzees and issued a judgment refusing to sign an order to show cause. Petitioner appeals.[1] [2]

This appeal presents the novel question of whether a chimpanzee is a "person" entitled to the rights and protections afforded by the writ of habeas corpus. Notably, we have not been asked to evaluate the quality of Tommy's current living conditions in an effort to improve his welfare. In fact, petitioner's counsel stated at oral argument that it does not allege that respondents are in violation of any state or federal statutes respecting the domestic possession of wild animals (see e.g. ECL 11-0512). According to petitioner, while respondents are in compliance with state and federal statutes, the statutes themselves are inappropriate. Yet, rather than challenging any such statutes, petitioner requests that this Court enlarge the common-law definition of "person" in order to afford legal rights to an animal. We decline to do so, and conclude that a chimpanzee is not a "person" entitled to the

---

[1] As Supreme Court's judgment finally determined the matter by refusing to issue an order to show cause to commence a habeas corpus proceeding, it is appealable as of right (see CPLR 7011; see generally People ex rel. Seals v New York State Dept. of Correctional Servs., 32 AD3d 1262, 1263 [2006]; People ex rel. Tatra v McNeill, 19 AD2d 845, 846 [1963]).

[2] During the pendency of this appeal, this Court granted petitioner's motion for a preliminary injunction enjoining respondents from removing Tommy to Florida (2014 NY Slip Op 77524[U] [2014]).

rights and protections afforded by the writ of habeas corpus.

The common law writ of habeas corpus, as codified by CPLR article 70, provides a summary procedure by which a "person" who has been illegally imprisoned or otherwise restrained in his or her liberty can challenge the legality of the detention (CPLR 7002 [a]). The statute does not purport to define the term "person," and for good reason. The "Legislature did not intend to change the instances in which the writ was available," which has been determined by "the slow process of decisional accretion" (People ex rel. Keitt v McMann, 18 NY2d 257, 263 [1966]) [internal quotation marks and citation omitted]). Thus, we must look to the common law surrounding the historic writ of habeas corpus to ascertain the breadth of the writ's reach.

Not surprisingly, animals have never been considered persons for the purposes of habeas corpus relief, nor have they been explicitly considered as persons or entities capable of asserting rights for the purpose of state or federal law (see e.g. Lewis v Burger King, 344 Fed Appx 470, 472 [10th Cir 2009], cert denied 558 US 1125 [2010]; Cetacean Community v Bush, 386 F3d 1169, 1178 [9th Cir 2004]; Tilikum ex rel. People for the Ethical Treatment of Animals, Inc. v Sea World Parks & Entertainment, Inc., 842 F Supp 2d 1259, 1263 [SD Cal 2012]; Citizens to End Animal Suffering & Exploitation, Inc. v New England Aquarium, 836 F Supp 45, 49-50 [D Mass 1993]). Petitioner does not cite any precedent — and there appears to be none — in state law, or under English common law, that an animal could be considered a "person" for the purposes of common-law habeas corpus relief. In fact, habeas corpus relief has never been provided to any nonhuman entity (see e.g. United States v Mett, 65 F3d 1531, 1534 [9th Cir 1995], cert denied 519 US 870 [1996]; Waste Management of Wisconsin, Inc. v Fokakis, 614 F2d 138, 139-140 [7th Cir 1980], cert denied 449 US 1060 [1980]; Sisquoc Ranch Co. v Roth, 153 F2d 437, 441 [9th Cir 1946]; Graham v State of New York, 25 AD2d 693, 693 [1966]).

The lack of precedent for treating animals as persons for habeas corpus purposes does not, however, end the inquiry, as the writ has over time gained increasing use given its "great flexibility and vague scope" (People ex rel. Keitt v McMann, 18

NY2d at 263) [internal quotation marks and citation omitted]). While petitioner proffers various justifications for affording chimpanzees, such as Tommy, the liberty rights protected by such writ, the ascription of rights has historically been connected with the imposition of societal obligations and duties. Reciprocity between rights and responsibilities stems from principles of social contract, which inspired the ideals of freedom and democracy at the core of our system of government (see Richard L. Cupp Jr., Children, Chimps, and Rights: Arguments From "Marginal" Cases, 45 Ariz St LJ 1, 12-14 [2013]; Richard L. Cupp Jr., Moving Beyond Animal Rights: A Legal/Contractualist Critique, 46 San Diego L Rev 27, 69-70 [2009]; see also Matter of Gault, 387 US 1, 20-21 [1967]; United States v Barona, 56 F3d 1087, 1093-1094 [9th Cir 1995], cert denied 516 US 1092 [1996]). Under this view, society extends rights in exchange for an express or implied agreement from its members to submit to social responsibilities. In other words, "rights [are] connected to moral agency and the ability to accept societal responsibility in exchange for [those] rights" (Richard L. Cupp Jr., Children, Chimps, and Rights: Arguments From "Marginal" Cases, 45 Ariz St LJ 1, 13 [2013]; see Richard L. Cupp Jr., Moving Beyond Animal Rights: A Legal/Contractualist Critique, 46 San Diego L Rev 27, 69 [2009]).

Further, although the dispositive inquiry is whether chimpanzees are entitled to the right to be free from bodily restraint such that they may be deemed "persons" subject to the benefits of habeas corpus, legal personhood has consistently been defined in terms of both rights and duties. Black's Law Dictionary defines the term "person" as "[a] human being" or, as relevant here, "[a]n entity (such as a corporation) that is recognized by law as having the rights and duties [of] a human being" (emphasis added). It then goes on to provide:

> "So far as legal theory is concerned, a person is any being whom the law regards as capable of rights and duties.. . . Persons are the substances of which rights and duties are the attributes. It is only in this respect that persons possess juridical significance, and this is the

> exclusive point of view from which
> personality receives legal recognition"
> (Black's Law Dictionary [7th ed 1999],
> citing John Salmond, Jurisprudence 318
> [10th ed 1947]; see John Chipman Gray, The
> Nature and Sources of the Law [2d ed], ch
> II, at 27 [stating that the legal meaning
> of a "person" is "a subject of legal
> rights and duties"]).

Case law has always recognized the correlative rights and duties that attach to legal personhood (see e.g. Smith v ConAgra Foods, Inc., 431 SW3d 200, 203-204 [Ark 2013], citing Calaway v Practice Mgmt. Servs., Inc., 2010 Ark 432, *4 [2010] [defining a "person" as "a human being or an entity that is recognized by law as having the rights and duties of a human being"]; Wartelle v Womens' & Children's Hosp., 704 So 2d 778, 780 [La 1997] [finding that the classification of a being or entity as a "person" is made "solely for the purpose of facilitating determinations about the attachment of legal rights and duties"]; Amadio v Levin, 509 Pa 199, 225, 501 A2d 1085, 1098 [1985, Zappala, J., concurring] [noting that "'[p]ersonhood' as a legal concept arises not from the humanity of the subject but from the ascription of rights and duties to the subject"]).[3] Associations of human beings, such as corporations and municipal entities, may be considered legal persons, because they too bear legal duties in exchange for their legal rights (see e.g. Pembina Consol. Silver Mining & Milling Co. v Pennsylvania, 125 US 181, 189 [1888]; Western Sur. Co. v ADCO Credit, Inc., 251 P3d 714, 716 [Nev 2011]; State v A.M.R., 147 Wash 2d 91, 94, 51 P3d 790, 791 [2002]; State v Zain, 207 W Va 54, 61-65, 528 SE2d 748, 755-759 [1999], cert denied 529 US 1042 [2000]).

---

[3]  To be sure, some humans are less able to bear legal duties or responsibilities than others.  These differences do not alter our analysis, as it is undeniable that, collectively, human beings possess the unique ability to bear legal responsibility. Accordingly, nothing in this decision should be read as limiting the rights of human beings in the context of habeas corpus proceedings or otherwise.

Needless to say, unlike human beings, chimpanzees cannot bear any legal duties, submit to societal responsibilities or be held legally accountable for their actions.  In our view, it is this incapability to bear any legal responsibilities and societal duties that renders it inappropriate to confer upon chimpanzees the legal rights — such as the fundamental right to liberty protected by the writ of habeas corpus — that have been afforded to human beings.

Our rejection of a rights paradigm for animals does not, however, leave them defenseless.  The Legislature has extended significant protections to animals, subject to criminal penalties, such as prohibiting the torture or unjustifiable killing of animals (see Agriculture and Markets Law § 353), the abandonment of animals in a public place (see Agriculture and Markets Law § 355), the transportation of animals in cruel or inhuman manners (see Agriculture and Markets Law § 359 [1]) or by railroad without periodically allowing them out for rest and sustenance (see Agriculture and Markets Law § 359 [2]), and the impounding of animals and then failing to provide them sustenance (see Agriculture and Markets Law § 356).  Notably, and although subject to certain express exceptions, New Yorkers may not possess primates as pets (see ECL 11-0103 [6] [e] [1]; 11-0512).  Thus, while petitioner has failed to establish that common-law relief in the nature of habeas corpus is appropriate here, it is fully able to importune the Legislature to extend further legal protections to chimpanzees.

Lahtinen, Garry, Rose and Lynch, JJ., concur.

ORDERED that the judgment is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court