******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NONHUMAN RIGHTS PROJECT, INC. *v.* R.W. COMMERFORD AND SONS, INC., ET AL.
## (AC 41464)

Lavine, Keller and Elgo, Js.

### *Syllabus*

The petitioner, N Co., filed a petition for a writ of habeas corpus on behalf of three elephants that it alleged were being illegally confined by the named respondents, C Co., a zoo, and C Co.'s president, W. N Co. alleged that elephants are autonomous beings who live complex emotional, social and intellectual lives, and possess complex cognitive abilities that are sufficient for common-law personhood. N Co. challenged the respondents' detention of the elephants and sought the common-law right to bodily liberty for them, but did not challenge the conditions of their confinement or the respondents' treatment of them. The habeas court declined to issue a writ of habeas corpus pursuant to the applicable rule of practice (§ 23-24 [a] [1] and [2]). The court concluded that it lacked subject matter jurisdiction because N Co. lacked standing to bring the habeas petition on behalf of the elephants. The court also determined that N Co., which failed to allege that it possessed any relationship with the elephants, did not satisfy the prerequisites for establishing next friend standing, and that the petition was wholly frivolous on its face. On N Co.'s appeal to this court, *held*:

1. The habeas court properly concluded that it lacked subject matter jurisdiction over N Co.'s habeas petition and declined to issue a writ of habeas corpus; because the elephants, not being persons, lacked standing to file a habeas petition in the first instance, N Co. could not establish that it had next friend standing to file a petition for a writ of habeas corpus on behalf of the elephants, as the real party in interest for whom a next friend seeks to advocate must have standing, and there was no basis in law on which to conclude that an entity seeking next friend status may confer standing on an alleged party in interest.

2. The habeas court properly declined to issue a writ of habeas corpus, as elephants do not have standing to file a habeas petition, they have no legally protected interest that can be adversely affected, and they are incapable of bearing legal duties, submitting to societal responsibilities or being held legally accountable for failing to uphold those duties and responsibilities: there are profound implications for a court to conclude that an elephant, or any nonhuman animal, is entitled to assert a claim in a court of law, as there is a lack of authority for recognizing a nonhuman animal as a person for purposes of habeas corpus, which would upend this state's legal system, our habeas corpus jurisprudence contains no indication that habeas corpus relief was ever intended to apply to a nonhuman animal, irrespective of the animal's purported autonomous characteristics, there is no instance in our common law in which a nonhuman animal or representative for it has been permitted to bring a lawsuit to vindicate the animal's own purported rights, and animals under Connecticut law, as in all other states, have generally been regarded as personal property; moreover, because an elephant is incapable of bearing duties and social responsibilities, as required under the social compact theory of article first, § 1, of the state constitution, and the legislature has statutorily (§ 52-466 [a]) authorized only a person to file an application for a writ of habeas corpus when the person claims to be illegally confined or deprived of liberty, and the term person has never been defined in our General Statutes as a nonhuman animal, this court would not disturb the common law concerning who may seek habeas relief in light of habeas corpus legislation, the lack of any indication that the General Assembly intended for habeas corpus relief to apply to nonhuman animals, and the lack of precedent recognizing that animals can possess their own legal rights.

Argued April 22—officially released August 20, 2019

### *Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Litchfield at Torrington, where the court, *Bentivegna, J.*, rendered judgment declining to issue a writ of habeas corpus, from which the petitioner appealed to this court; thereafter, the court, *Bentivegna, J.*, denied the petitioner's motion to reargue and for leave to amend its petition, and issued an articulation of its decision. *Affirmed.*

*Steven M. Wise*, pro hac vice, with whom were *David B. Zabel* and, on the brief, *Barbara M. Schellenberg*, for the appellant (petitioner).

*Thomas R. Cherry* filed a brief for Laurence H. Tribe as amicus curiae.

*Thomas R. Cherry* filed a brief for Justin Marceau et al. as amici curiae.

*Mark A. Dubois* filed a brief as amicus curiae.

*Jessica S. Rubin* filed a brief for The Philosophers as amici curiae.

*Opinion*

KELLER, J. The petitioner, Nonhuman Rights Project, Inc., appeals from the judgment of the habeas court declining[1] to issue a writ of habeas corpus that it sought on behalf of three elephants, Beulah, Minnie, and Karen (elephants), who are alleged to be confined by the named respondents, R.W. Commerford & Sons, Inc. (also known as the Commerford Zoo), and its president, William R. Commerford, at the Commerford Zoo in Goshen.[2] The petitioner argues that the court erred in (1) dismissing its petition for a writ of habeas corpus on the basis that it lacked standing, (2) denying its subsequent motion to amend the petition, and (3) dismissing the habeas petition on the alternative ground that it was "wholly frivolous." For the reasons discussed herein, we agree with the habeas court that the petitioner lacked standing.[3] Accordingly, we affirm the judgment of the habeas court.

On November 13, 2017, the petitioner filed a verified petition for a common-law writ of habeas corpus on behalf of the elephants pursuant to General Statutes § 52-466 et seq. and Practice Book § 23-21 et seq. The petitioner alleged that it is a not-for-profit corporation with a mission of changing "the common law status of at least some nonhuman animals from mere things, which lack the capacity to possess any legal rights, to persons, who possess such fundamental rights as bodily integrity and bodily liberty, and those other legal rights to which evolving standards of morality, scientific discovery, and human experience entitle them." (Internal quotation marks omitted.) The petitioner alleged that the named respondents are illegally confining the elephants.

The petition makes clear that it "challenges neither the conditions of [the elephants'] confinement nor [the] respondents' treatment of the elephants, but rather the fact of their detention itself . . . ." It is "not seeking any right other than the common-law right to bodily liberty" for the elephants. The petition states that determining "[w]ho is a 'person' is the most important individual question that can come before a court, as the term person identifies those entities capable of possessing one or more legal rights. Only a 'person' may invoke a common-law writ of habeas corpus, and the inclusion of elephants as 'persons' for that purpose is for this court to decide." The petition further alleges that "[t]he expert affidavits submitted in support of [the] petition set forth the facts that demonstrate that elephants . . . are autonomous beings who live extraordinarily complex emotional, social, and intellectual lives, and who possess those complex cognitive abilities sufficient for common-law personhood and the common-law right to bodily liberty protected by the common law of habeas corpus, as a matter of common-law liberty, equality, or both."

On December 26, 2017, the habeas court issued a memorandum of decision. Therein, pursuant to Practice Book § 23-24 (a) (1),[4] it declined to issue a writ of habeas corpus because it concluded that the petitioner lacked standing to bring the petition on behalf of the elephants. The court concluded that the petitioner failed to satisfy next friend standing "[b]ecause the petitioner . . . failed to allege that it possesses any relationship with the elephants . . . ." (Emphasis omitted.) Additionally, pursuant to Practice Book § 23-24 (a) (2), the court declined to issue a writ for the elephants because it concluded that the petition was wholly frivolous on its face. On January 16, 2018, the petitioner filed a motion to reargue and for leave to amend its petition. The court denied those motions in a memorandum of decision dated February 27, 2018. This appeal followed.[5]

I

The petitioner first claims that the court erred in concluding that it lacked subject matter jurisdiction on the ground that the petitioner did not have standing to bring the petition on behalf of the elephants. It contends that "Connecticut law permits even strangers to file habeas corpus petitions on another's behalf," and neither § 52-466 (a) (2) nor Practice Book § 23-40 (a) limit who may bring a habeas corpus petition. It argues that although the "court correctly stated that '[o]utside the context of child custody, a petitioner deemed to be a "next friend" of a detainee has standing to bring a petition for [a] writ of habeas on the detainee's behalf,' " the court erroneously relied on our Supreme Court's decision in *State* v. *Ross*, 272 Conn. 577, 597, 863 A.2d 654 (2005), which cited to *Whitmore* v. *Arkansas*, 495 U.S. 149, 163, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990), concluding that the petitioner could not serve as next friend to the elephants because it had failed to allege a "significant relationship" with the elephants. In the petitioner's view, Connecticut has neither adopted the second prong of the next friend test set forth in *Whitmore*, nor its dicta regarding "significant relationship."

We begin by setting forth our standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 127–28, 836 A.2d 414 (2003).

On the basis of our plenary review of the issue of standing in this case, we conclude that the trial court's determination that the petitioner lacked standing to file a petition for a writ of habeas corpus on behalf of the

elephants was correct. We need not, however, reach the issue of whether the court correctly determined that the petitioner was required, and failed, to allege a significant relationship with the elephants because we conclude that the petitioner lacked standing for a more fundamental reason—the elephants, not being persons, lacked standing in the first instance.[6] We briefly explain.

Next friend standing essentially allows a third party to advance a claim in court on behalf of another when the party in interest is unable to do so on his or her own. See *Phoebe G.* v. *Solnit*, 252 Conn. 68, 77, 743 A.2d 606 (1999) ("the general rule is that a next friend may not bring an action for a competent person"); see also *El Ameen Bey* v. *Stumpf*, 825 F. Supp. 2d 537, 559 (D. N.J. 2011) ("[u]nder the 'next friend' doctrine, standing is allowed to a third person so this third person [can] file and pursue a claim in court on behalf of someone who is unable to do so on his or her own"). The "next friend" does not himself become a party to the action in which he participates, but simply pursues the action on behalf of the real party in interest. See *State* v. *Ross*, supra, 272 Conn. 597 ("a person who seeks next friend status by the very nature of the proceeding will have no specific personal and legal interest in the matter"); see also *Whitmore* v. *Arkansas*, supra, 495 U.S. 163 ("[a] 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest"). Thus, it is apparent that the real party in interest for whom the "next friend" seeks to advocate for, must have standing in the first instance. See *Hamdi* v. *Rumsfeld*, 294 F.3d 598, 603 (4th Cir. 2002) (noting that "a person who does not satisfy Article III's standing requirements may still proceed in federal court if he meets the criteria to serve as next friend of someone who does"). As we will discuss in part II of this opinion, we conclude that the elephants do not have standing to file a petition for a writ of habeas corpus. It follows inexorably that the petitioner cannot satisfy the prerequisites for establishing next friend standing, for there is no basis in law on which to conclude that an entity seeking next friend status may confer standing on an alleged party in interest.[7] Accordingly, we conclude that the court properly determined that it lacked subject matter jurisdiction.

## II

We explained in part I of this opinion that the petitioner could not establish next friend status without first demonstrating that the elephants had standing in the first instance. We now address why the elephants lack standing.

Our Supreme Court has long held that "[s]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative

capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 207, 994 A.2d 106 (2010).

Only a limited number of courts have addressed the issue of whether a nonhuman animal who allegedly has been injured has standing to bring a claim in a court of law. There are even fewer cases addressing whether a nonhuman animal can challenge its confinement by way of a petition for a writ a habeas corpus. The petitioner asserts that this case "turns on whether [the elephants] are 'persons' solely for the purpose of the common-law right to bodily liberty that is protected by the common law of habeas corpus." In its view, the elephants are entitled to a writ of habeas corpus as a matter of common-law liberty because the writ of habeas corpus is deeply rooted in our cherished ideas of individual autonomy and free choice. It essentially invites this court to expand existing common law. This case, however, is more than what the petitioner purports it to be. Not only would this case require us to recognize elephants as "persons" for purposes of habeas corpus, this recognition essentially would require us to upend this state's legal system to allow highly intelligent, if not all, nonhuman animals the right to bring suit in a court of law. At this juncture, we decline to make such sweeping pronouncements when there exists so little authority for doing so.

Our examination of our habeas corpus jurisprudence, which is in accord with the federal habeas statutes and English common law; see *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 815, 786 A.2d 1091 (2002); reveals no indication that habeas corpus relief was ever intended to apply to a nonhuman animal, irrespective of the animal's purported autonomous characteristics. See *People ex rel. Nonhuman Rights Project, Inc.* v. *Lavery*, 124 App. Div. 3d 148, 150, 998 N.Y.S.2d 248 (2014) ("animals have never been considered persons for the purposes of habeas corpus relief, nor have they been explicitly considered as persons or entities capable of asserting rights for the purpose of state or federal

law"), leave to appeal denied, 26 N.Y.3d 902, 38 N.E.3d 828, 17 N.Y.S.3d 82 (2015). Further, a thorough review of our common law discloses no instance in which a nonhuman animal, or a representative for that animal, has been permitted to bring a lawsuit to vindicate the animal's own purported rights. Instead, animals under Connecticut law, as in all other states, have generally been regarded as personal property. See, e.g., *Griffin* v. *Fancher*, 127 Conn. 686, 688–89, 20 A.2d 95 (1941) (recognizing dogs as property and right of action against one who negligently kills or injures them, so long as dog was properly registered).

Although the lack of precedent in support of the petitioner's action is not necessarily dispositive of this claim, we note, as has another court in addressing a similar claim, that "ascription of rights has historically been connected with the imposition of societal obligations and duties." *People ex rel. Nonhuman Rights Project*, *Inc.* v. *Lavery*, supra, 124 App. Div. 3d 151. Indeed, article first, § 1, of the Connecticut constitution describes our constitution as a "social compact . . . ." Our Supreme Court has noted that "[t]he social compact theory posits that all individuals are born with certain natural rights and that people, in freely consenting to be governed, enter a social compact with their government by virtue of which they relinquish certain individual liberties in exchange 'for the mutual preservation of their lives, liberties, and estates.' J. Locke, 'Two Treatises of Government,' book II (Hafner Library of Classics Ed. 1961) ¶ 123, p. 184; see also 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) pp. 12–13." *Moore* v. *Ganim*, 233 Conn. 557, 598, 660 A.2d 742 (1995). One academic has also remarked: "Our society and government are based on the ideal of moral agents coming together to create a system of rules that entail both rights and duties. Being . . . subject to legal duties and bearing rights are foundations of our legal system because they are foundations of our entire form of government." R. Cupp, "Focusing on Human Responsibility Rather Than Legal Personhood for Nonhuman Animals," 33 Pace Envtl. L. Rev. 517, 527 (2016). Despite the petitioner's asseverations for why the elephants should be afforded liberty rights, it is inescapable that an elephant, or any nonhuman animal for that matter, is incapable of bearing duties and social responsibilities required by such social compact.

Moreover, it would be remiss of this court not to acknowledge that "[a]lthough the writ of habeas corpus has a long common-law history, the legislature has enacted numerous statutes shaping its use . . . ." (Footnote omitted.) *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 565–66, 153 A.3d 1233 (2017). Our Supreme Court has stated that "statutes are a useful source of policy for common-law adjudication, particularly when there is a close relationship between the statutory and common-law subject matters. . . . Stat-

utes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time . . . ." (Internal quotation marks omitted.) Id., 566, quoting *C & J Builders & Remodelers, LLC* v. *Geisenheimer*, 249 Conn. 415, 419–20, 733 A.2d 193 (1999).

Section 52-466, which governs the litigation of the writ as a civil matter, provides in relevant part: "(a) (1) An application for a writ of habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the *person* whose custody is in question is claimed to be illegally confined or deprived of such *person's* liberty." (Emphasis added.) Thus, § 52-466 (a) (1) unequivocally authorizes a *person*, not an animal, to file an application for a writ of habeas corpus in the judicial district in which that *person* whose custody is in question is claimed to be illegally confined. We have found no place in our General Statutes where the term "person" has ever been defined as a nonhuman animal.[8] See, e.g., General Statutes § 53a-3 (1) (" '[p]erson' means a human being, and, where appropriate, a public or private corporation, a limited liability company, an unincorporated association, a partnership, a government or a governmental instrumentality").

In light of both established habeas corpus legislation and the recent legislative activity in the field; see *Kaddah* v. *Commissioner of Correction*, supra, 324 Conn. 567–69; id., 566 (noting that "the legislature recently engaged in comprehensive habeas reform"); which contain no indication that the General Assembly intended for habeas corpus relief to apply to nonhuman animals, in addition to the lack of precedent recognizing that animals can possess their own legal rights, we stay our hand as a matter of common law with respect to disturbing who can seek habeas corpus relief. See id., 568 ("given recent legislative activity in the field with no indication that the General Assembly intended to eliminate the use of the common-law habeas corpus remedy to vindicate the statutory right under [General Statutes] § 51-296 (a) . . . we stay our hand as a matter of common law with respect to disturbing the availability of that remedy").

There are profound implications for a court to conclude that an elephant, or any nonhuman animal for that matter, is entitled to assert a claim in a court of law. In the present case, we have little difficulty concluding that the elephants—who are incapable of bearing legal duties, submitting to societal responsibilities, or being held legally accountable for failing to uphold those duties and responsibilities—do not have standing to file a petition for a writ of habeas corpus because they have no legally protected interest that possibly can be adversely affected. See *Gold* v. *Rowland*, supra, 296

Conn. 207 ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" [internal quotation marks omitted]). Accordingly, we conclude that the court properly declined to issue a writ of habeas corpus on standing grounds.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the habeas court stated in its memorandum of decision that it was dismissing the petition, it explicitly relied on Practice Book § 23-24 in doing so. Because that provision authorizes the habeas court to decline to issue the writ, we construe the court's disposition of the petition to be a decision to decline to "issue the writ." See *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 80 n.3, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

[2] The named respondents are not parties to the action. The petitioner alleged in its petition: "As this action is instituted ex parte pursuant to Practice Book § 23-23, respondents have not been served with this petition. The [petitioner] will promptly serve the petition upon the respondents upon the issuance of the writ or as otherwise directed by the court." (Emphasis omitted.)

[3] Given our resolution of the petitioner's first claim, we need not address the petitioner's other claims. See footnote 7 of this opinion.

[4] Practice Book § 23-24 provides in relevant part: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction; [or]

"(2) the petition is wholly frivolous on its face . . . ."

As we explained in *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 82–83, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018), "Practice Book § 23-24 is intended to permit a habeas court to conduct a preliminary review of a petition prior to further adjudication of the writ to weed out those petitions the adjudication of which would be a waste of precious judicial resources either because the court lacks jurisdiction over it, the petition is wholly frivolous, or it seeks relief that the court simply cannot grant."

[5] After commencing this appeal, the petitioner filed with the habeas court a motion for articulation, which the court denied in part on May 23, 2018. The petitioner filed a motion for review with this court on June 5, 2018. On July 25, 2018, this court granted review but denied the relief requested by the petitioner.

[6] Although we resolve the legal issue of standing on a slightly different basis than that on which the habeas court relied, we nonetheless are satisfied that, in its appellate brief, the petitioner extensively has addressed the ground on which we rely. Indeed, the petitioner addresses in at least ten pages of its brief why the elephants, which it argues are autonomous beings, should be afforded personhood status for purposes of habeas corpus.

[7] Because we conclude that the petitioner cannot establish next friend standing on the ground that the elephants lacked standing in the first instance, we need not address whether the petitioner met the other two prerequisites our Supreme Court has said are necessary to establish next friend status. In *In re Application for Writ of Habeas Corpus by Dan Ross*, 272 Conn. 653, 659, 866 A.2d 542 (2005), our Supreme Court explained that it evaluated the evidence in the case according to the standards set forth in *Whitmore* v. *Arkansas*, supra, 495 U.S. 163–64, which establishes two prerequisites for demonstrating next friend status. In particular, our Supreme Court explained: "In *Whitmore* v. *Arkansas*, [supra, 149], the United States Supreme Court noted that, to establish next friend status, a person: (1) 'must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate . . . [and] must have some significant relationship with the real party in interest'; id., 163–64; and (2) 'must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.' Id., 163." *In re Application for Writ of Habeas Corpus by Dan Ross*, supra, 659–60 n.7.

As we explained in footnote 3 of this opinion, we need not address the

petitioner's claims that the court erred (1) in denying its motion to amend its petition, and (2) dismissing the habeas petition for being wholly frivolous. Even had the petitioner been given the opportunity to amend its petition to add an allegation that the petitioner had a significant relationship with the elephants or that the elephants had no significant relationships to allege, such amendment would not have overcome the fact that the elephants lack standing in the first instance.

[8] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

Black's Law Dictionary (11th Ed. 2019) defines "person" as "[a] human being," "[t]he living body of a human being," or as "[a]n entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being." Id., pp. 1378–79.

General Statutes § 1-1 (k) instructs: "The words 'person' and 'another' may extend and be applied to communities, companies, corporations, public or private, limited liability companies, societies and associations."

We note that entities to which personhood has been ascribed by law are formed and governed for the benefit of human beings. See *People ex rel. Nonhuman Rights Project, Inc.* v. *Lavery*, supra, 124 App. Div. 3d 152 (noting that "[a]ssociations of human beings, such as corporations and municipal entities, may be considered legal persons, because they too bear legal duties in exchange for their legal rights").

[9] Our conclusion that the petitioner in this case lacks standing, however, does not restrict it, or others, from advocating for added protections for elephants or other nonhuman animals at the legislature. We acknowledge that elephants are magnificent animals who naturally develop social structures and exhibit emotional and intellectual capacities. They are deserving of humane treatment whether they exist in the wild or captivity. Our law recognizes—as any pet owner knows—that animals are sentient beings and an entirely different kind of property than a chair or a table. We note that our legislature has enacted comprehensive laws prohibiting abusive behaviors toward animals, which carry penalties that are based on the severity of the abuse and the abuser's intent. See, e.g., General Statutes § 53-247. With respect to elephants, the legislature has passed legislation that gives the Commissioner of Energy and Environmental Protection regulatory power to adopt regulations to regulate trade in Connecticut if such trade of elephant ivory or products manufactured or derived from elephant ivory contributes to the extinction or endangerment of elephants. See General Statutes § 26-315. Whether, as a matter of public policy, nonhuman animals, such as elephants, should possess individual rights and be permitted to bring a claim in a court of law are issues for the legislature to address, if it is so inclined.

————————————————————