******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NONHUMAN RIGHTS PROJECT, INC. *v.* R.W.
COMMERFORD & SONS, INC., ET AL.
(AC 42795)

Alvord, Bright and Beach, Js.

*Syllabus*

The petitioner, N Co., sought a writ of habeas corpus on behalf of three
elephants that it alleged were being illegally confined by the named
respondents, C Co., a zoo, and C Co.'s president, W. N Co. challenged
the detention of the elephants, sought recognition of the elephants
as "persons" recognized by the common law, and requested that the
elephants be released. The habeas court dismissed the petition as succes-
sive in light of N Co.'s first petition against C Co. and W, which alleged
essentially the same facts and sought the same relief. On appeal to this
court, at which time only one of the three elephants remained alive, the
petitioner claimed that the habeas court erred in dismissing its second
petition as successive and that this court's decision on the first petition,
which affirmed the habeas court's decision to decline to issue the writ,
was incorrect. *Held* that the habeas court properly dismissed the present
petition for a writ of habeas corpus, as the elephant, and consequently,
N Co., lacked standing to file a petition for a writ of habeas corpus
because the elephant had no legally protected interest that possibly
could be adversely affected; the reasoning and the holding in the appel-
late decision on the first petition were clearly applicable to the present
petition and controlled the resolution of this appeal, N Co. failed to
present any material distinctions between the first appeal and the pres-
ent appeal, our habeas corpus jurisprudence contained no indication
that habeas corpus relief was ever intended to apply to a nonhuman
animal, our common law revealed no instances of a nonhuman animal
permitted to bring an action to vindicate its purported rights, only a
person, not an animal, whose custody is in question is authorized to
file an application for a writ of habeas corpus, the term "person" in our
General Statutes has never been defined as a nonhuman animal, and
recent legislative activity regarding habeas corpus lacked any indication
that the legislature intended habeas corpus relief to apply to nonhu-
man animals.

Argued January 8—officially released May 19, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland, where
the matter was transferred to the judicial district of
Litchfield at Torrington and tried to the court, *Shaban*,
*J.*; judgment dismissing the petition, from which the
petitioner appealed to this court. *Affirmed*.

*Steven M. Wise*, pro hac vice, with whom were *Bar-
bara M. Schellenberg* and, on the brief, *David B. Zabel*,
for the appellant (petitioner).

*Opinion*

ALVORD, J. The petitioner, Nonhuman Rights Project, Inc., appeals from the judgment of the habeas court dismissing its petition for a writ of habeas corpus that it sought on behalf of an elephant, Minnie,[1] who is alleged to be owned by the named respondents, R.W. Commerford & Sons, Inc. (also known as the Commerford Zoo), and its president, William R. Commerford.[2] The petitioner argues that the court improperly dismissed its petition for a writ of habeas corpus. We conclude that the court properly dismissed the petition on the alternative ground that the petitioner lacked standing.[3]

On November 13, 2017, the petitioner filed its first verified petition for a common-law writ of habeas corpus on behalf of three elephants; see footnote 1 of this opinion; pursuant to General Statutes § 52-466 et seq. and Practice Book § 23-21 et seq. (first petition). See *Nonhuman Rights Project, Inc.* v. *R.W. Commerford & Sons, Inc.*, 192 Conn. App. 36, 38, 216 A.3d 839 (*Commerford I*), cert. denied, 333 Conn. 920, 217 A.3d 635 (2019). "The petitioner alleged that it is a not-for-profit corporation with a mission of changing the common-law status of at least some nonhuman animals from mere things, which lack the capacity to possess any legal rights, to persons, who possess such fundamental rights as bodily integrity and bodily liberty, and those other legal rights to which evolving standards of morality, scientific discovery, and human experience entitle them. . . . The petitioner alleged that the named respondents are illegally confining the elephants.

"The petition [made] clear that it challenge[d] neither the conditions of [the elephants'] confinement nor [the] respondents' treatment of the elephants, but rather the fact of their detention itself . . . . It [was] not seeking any right other than the common-law right to bodily liberty for the elephants. The petition state[d] that determining [who] is a person is the most important individual question that can come before a court, as the term person identifies those entities capable of possessing one or more legal rights. Only a person may invoke a common-law writ of habeas corpus, and the inclusion of elephants as persons for that purpose [was] for this court to decide. The petition further allege[d] that [the] expert affidavits submitted in support of [the] petition set forth the facts that demonstrate that elephants . . . are autonomous beings who live extraordinarily complex emotional, social, and intellectual lives, and who possess those complex cognitive abilities sufficient for common-law personhood and the common-law right to bodily liberty protected by the common law of habeas corpus, as a matter of common-law liberty, equality, or both." (Internal quotation marks omitted.) Id., 38–39.

On December 26, 2017, the habeas court, *Bentivegna, J.*, declined to issue a writ of habeas corpus pursuant to Practice Book § 23-24 (a) (1) and (2)[4] on the basis that the petitioner lacked standing to bring the petition on behalf of the elephants and that the petition was wholly frivolous on its face. Id., 39–40. The petitioner appealed to this court. *While the appeal to this court from the order of the habeas court declining to issue the writ with respect to its first petition was pending*, the petitioner filed the present petition for a writ of habeas corpus on June 11, 2018.[5] The petition again sought recognition of the elephants as "persons," within the meaning of the common law, in order to secure the elephants' common-law right to bodily liberty protected by habeas corpus. The petition requested release of the elephants from the alleged illegal confinement.

On February 13, 2019, the habeas court, *Shaban, J.*, issued a memorandum of decision dismissing the petition as successive under Practice Book § 23-29 (3), concluding that the petitioner, the named respondents, the subjects of the petition, the grounds asserted in the petition, and the relief sought by the petition were all the same as in the first petition.[6] It further concluded that, even if the petition were not successive, it would be subject to dismissal pursuant to Practice Book § 23-29 (5).[7] This appeal followed.[8]

On appeal, the petitioner claims that the habeas court erred in dismissing its petition.[9] After the petitioner filed its appellate brief in this appeal, this court released its decision in *Commerford I*, supra, 192 Conn. App. 36, which affirmed the habeas court's decision to decline to issue the writ with respect to the petitioner's first petition. This court concluded in *Commerford I* that the petitioner could not satisfy the prerequisites for establishing next friend standing because the elephants lacked standing in the first instance. Id., 41. The elephants lacked standing to file a petition for a writ of habeas corpus because they lacked a legally protected interest that possibly could be adversely affected and, therefore, the habeas court properly declined to issue the writ on standing grounds. Id., 48. Following this court's decision in *Commerford I*, the petitioner filed a motion for reconsideration en banc,[10] which this court denied, and a petition for certification to appeal to our Supreme Court,[11] which also was denied.

The petitioner thereafter was granted permission to file a supplemental brief in this appeal. In its supplemental brief, the petitioner argued that "this court should disregard [*Commerford I*] as it is 'clearly wrong,' " presenting nine arguments in support of this claim.[12] "[A]s we often have stated, this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-*

*385* v. *Westport Dept. of Public Works*, 151 Conn. App. 477, 484 n.7, 95 A.3d 1178, cert. denied, 314 Conn. 930, 101 A.3d 274 (2014); see *State* v. *Joseph B.*, 187 Conn. App. 106, 125 n.14, 201 A.3d 1108, cert. denied, 331 Conn. 908, 202 A.3d 1023 (2019); see also Practice Book § 70-7.[13] At oral argument before this court, the petitioner's counsel recognized both that this court cannot overrule a decision of a prior panel and that it had not filed a request to have the present appeal heard en banc.[14] Accordingly, we decline the petitioner's request to revisit our precedent.

In accordance with our decision in *Commerford I*, we conclude that Minnie and, consequently, the petitioner, lack standing. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 373–74, 10 A.3d 1 (2010).

In *Commerford I*, this court first examined our habeas corpus jurisprudence, which revealed "no indication that habeas corpus relief was ever intended to apply to a nonhuman animal," and our common law, which revealed no instances of nonhuman animals being permitted to bring a cause of action to "vindicate the animal's own purported rights." *Commerford I*, supra, 192 Conn. App. 45. It then discussed the social compact theory, pursuant to which "all individuals are born with certain natural rights and that people, in freely consenting to be governed, enter a social compact with their government by virtue of which they relinquish certain individual liberties in exchange for the mutual preservation of their lives, liberties, and estates." (Internal quotation marks omitted.) Id., 45–46. It explained that elephants and other nonhuman animals are "incapable of bearing duties and social responsibilities required by such social compact." Id., 46.

Next, this court turned to our statutes, particularly

§ 52-466,[15] which shapes the use of a writ of habeas corpus. The court noted that "§ 52-466 (a) (1) unequivocally authorizes a *person*, not an animal, to file an application for a writ of habeas corpus in the judicial district in which that *person* whose custody is in question is claimed to be illegally confined." (Emphasis in original.) Id., 47. It further stated that it "found no place in our General Statutes where the term 'person' has ever been defined as a nonhuman animal." Id. Noting recent legislative activity regarding habeas corpus, which lacked any indication that the legislature intended habeas corpus relief to apply to nonhuman animals, and the lack of case law holding that animals can possess their own legal rights, this court declined to disturb who can seek habeas corpus relief. It concluded that "the elephants —who are incapable of bearing legal duties, submitting to societal responsibilities, or being held legally accountable for failing to uphold those duties and responsibilities—do not have standing to file a petition for a writ of habeas corpus because they have no legally protected interest that possibly can be adversely affected." Id., 48.

The petitioner has failed entirely to present any material distinctions between *Commerford I* and the present case. The reasoning and the holding in *Commerford I* are clearly applicable to the present case, and control the resolution of this appeal. We therefore conclude that Minnie and, consequently, the petitioner, lacked standing to file a petition for a writ of habeas corpus.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petition originally was filed on behalf of three elephants: Beulah, who was in her "mid-forties"; Minnie, who has been owned by the named respondents since at least 1989; and Karen, who was in her "mid-thirties." The petitioner represented during oral argument before this court that Beulah and Karen have since died. Counsel for the petitioner stated that, although he believes that Karen died in March, 2019, he did not learn of her death at the time because he does not have access to the elephants.

[2] The named respondents are not parties to the action or to this appeal.

[3] Given our conclusion that the petitioner lacked standing, we need not address the petitioner's claims that the habeas court improperly (1) dismissed its petition for a writ of habeas corpus on the ground that it was successive pursuant to Practice Book § 23-29 (3) and (2) concluded that, even if it were not successive, it would be subject to dismissal pursuant to Practice Book § 23-29 (5).

[4] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:
"(1) the court lacks jurisdiction;
"(2) the petition is wholly frivolous on its face; or
"(3) the relief sought is not available.
"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[5] Despite alleging that the elephants were being detained by the named respondents in Goshen, which is located in the judicial district of Litchfield where the petitioner filed its first petition, the petitioner filed the present petition in the judicial district of Tolland. It was transferred by the court, sua sponte, to the judicial district of Litchfield.
When asked during oral argument before this court why the petition was filed in Tolland, the petitioner's counsel, who appeared pro hac vice, represented that he believed that the judges in Tolland would have a greater understanding of habeas corpus. The petitioner's counsel conceded that this constituted "judge shopping." He later stated that he was not looking

for a judge that would rule in his favor but, rather, one that "worked in the area of habeas corpus day in and day out." Local counsel for the petitioner, Barbara M. Schellenberg, was asked during oral argument whether she was cognizant of the "judge shopping" occurring in the case, and she stated that she personally was not involved in the matter before the trial court.

Following oral argument, David B. Zabel, also local counsel for the petitioner, filed with this court a letter stating that pro hac vice counsel for the petitioner believed, at the time of the filing of the petition, that it would not be improper to file the petition in the judicial district of Tolland. Zabel agreed with that position, likening the filing of the petition in Tolland to "seeking to have a complex civil case transferred to the complex litigation docket in Connecticut to have it heard before a judge experienced in complex cases."

We strongly disagree that counsels' filing of the habeas petition in Tolland was proper. See General Statutes § 52-466 (a) (1) ("[a]n application for a writ of habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty").

Furthermore, we are extremely troubled by counsels' implication that filing a second action that is virtually identical to the first action, which the petitioner lost, was justified because Judge Bentivegna did not have sufficient knowledge of or experience in habeas corpus matters when he ruled against the petitioner. Not only does such a suggestion unfairly impugn an experienced and capable judge, our system does not work that way. A litigant may not file a repetitive action just because it is unhappy with the ruling of the first judge. A disappointed litigant's remedy after losing in the trial court is to appeal to this court or to our Supreme Court, not to file a second action essentially asking one Superior Court judge to overrule another. This is not a novel concept.

[6] In dismissing the petition, the habeas court considered a motion filed by the petitioner seeking that the court rule promptly on its petition for a writ of habeas corpus and for oral argument to be held thereon.

[7] Practice Book § 23-29 (5) provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . any other legally sufficient ground for dismissal of the petition exists."

[8] The petitioner filed a motion to reargue, which was denied.

[9] "Whether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary." *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 553, 223 A.3d 368 (2020).

[10] Therein, the petitioner argued that the decision conflicted with appellate precedent in four ways. "First, under *Jackson* v. *Bulloch*, [12 Conn. 38 (1837)], the [petitioner's] standing did not depend upon the elephants having standing. Second, under *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd*, [197 Conn. 554, 557 n.1, 499 A.2d 797 (1985)], and other controlling authorities, this court improperly resolved the question of standing by determining the merits of the case. Third, under *Johnson* v. *Commissioner of Correction*, [168 Conn. App. 294, 308 n.8, 145 A.3d 416, cert. denied, 323 Conn. 937, 151 A.3d 385 (2016)], the [petitioner] was prejudiced by its lack of opportunity to adequately address the merits of the case both in the lower court and this court. Fourth, Beulah, Minnie, and Karen are already legal persons whose status as beneficiaries of an inter vivos trust created pursuant to [General Statutes §] 45a-489a does not turn on their capacity to bear duties and social responsibilities; neither should their right to bodily liberty so turn under *Jackson* v. *Bulloch*."

[11] In its petition for certification to appeal to our Supreme Court, the petitioner presented the following questions for review: "A. Did the Appellate Court err in holding that the real party in interest, Minnie—an Asian elephant unlawfully detained by [the named respondents]—must have standing in the first instance in order for [the petitioner] to have next friend standing to pursue a habeas corpus action on her behalf, where the action seeks a good faith extension or modification of the Connecticut common law of habeas corpus?

"B. Did the Appellate Court err when it resolved the question of Minnie's standing by determining the merits of the case?

"C. Did the Appellate Court err in determining that personhood requires the ability to bear duties and social responsibilities, an issue which neither the trial court nor the

Appellate Court provided [the petitioner] with an adequate opportunity to present, brief, and argue?" (Footnote omitted.)

[12] In its supplemental brief, the petitioner raised the following arguments: "this court erroneously conflated the question of [the petitioner's] standing

with the merits when it determined that Minnie was not a 'person' for standing purposes"; "in conflict with *Jackson* v. *Bulloch*, [12 Conn. 38 (1837)] this court erroneously concluded that [the petitioner's] standing depended on Minnie having 'standing in the first instance' "; "the English and American common law of habeas corpus have long granted third parties standing to challenge a stranger's private detention"; "in conflict with *Jackson* [v. *Bulloch*, supra, 38] and Anglo-American jurisprudence, this court erroneously concluded that Minnie is not a 'person' because she is 'incapable of bearing duties and social responsibilities required by [the] social compact' "; "Minnie is already a 'person' as she has the right of a trust beneficiary under General Statutes § 45a-489a (a)"; (emphasis in original); "by asserting that the undefined term 'person' in General Statutes § 52-466 (a) (1) cannot apply to an animal . . . this court erroneously conflated 'person' with 'human being,' which are not synonymous"; "§ 52-466 and Practice Book § 23-21 et seq. are purely procedural and cannot determine the substantive scope of habeas corpus . . . [t]hus, it is irrelevant that judges or legislators may not have had elephants in mind when determining who was entitled to habeas corpus relief"; "Connecticut courts are 'charged with the ongoing responsibility to revisit our common-law doctrines when the need arises' "; and "allowing Minnie to seek habeas corpus relief would not 'require [this court] to upend this state's legal system to allow highly intelligent, if not all, nonhuman animals the right to bring suit in a court of law.' " (Emphasis in original.)

[13] Practice Book § 70-7 provides: "(a) Before a case is assigned for oral argument, the chief judge may order, on the motion of a party or sua sponte, that a case be heard en banc.

"(b) After argument but before decision, the entire court may order that the case be considered en banc with or without further oral argument or with or without supplemental briefs. The judges who did not hear oral argument shall have available to them the electronic recording or a transcript of the oral argument before participating in the decision.

"(c) After decision, the entire court may order, on the motion of a party pursuant to Section 71-5 or sua sponte, that reargument be heard en banc."

[14] Instead, when asked during oral argument before this court whether he was waiting to seek consideration en banc until after this court issued its decision stating that it could not reverse the ruling of the prior panel, the petitioner's counsel represented that he intended to file a motion for reconsideration en banc after this court issues its decision in this appeal.

[15] See footnote 5 of this opinion.

[16] Following oral argument before this court, the petitioner submitted a notice of supplemental authority citing *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 223 A.3d 368 (2020), stating that it is significant because the habeas court dismissed the present petition pursuant to Practice Book § 23-29 (3) prior to issuing the writ.

In *Gilchrist*, our Supreme Court clarified the proper procedure to be used by the habeas court in its preliminary consideration of a petition for a writ of habeas corpus under Practice Book §§ 23-24 and 23-29. Id., 550. It summarized: "[W]hen a petition for a writ of habeas corpus alleging a claim of illegal confinement is submitted to the court, the following procedures should be followed. First, upon receipt of a habeas petition that is submitted under oath and is compliant with the requirements of Practice Book § 23-22; see Practice Book §§ 23-22 and 23-23; the judicial authority must review the petition to determine if it is patently defective because the court lacks jurisdiction, the petition is wholly frivolous on its face, or the relief sought is unavailable. Practice Book § 23-24 (a). If it is clear that any of those defects are present, then the judicial authority should issue an order declining to issue the writ, and the office of the clerk should return the petition to the petitioner explaining that the judicial authority has declined to issue the writ pursuant to § 23-24. Practice Book § 23-24 (a) and (b). If the judicial authority does not decline to issue the writ, then it must issue the writ, the effect of which will be to require the respondent to enter an appearance in the case and to proceed in accordance with applicable law. At the time the writ is issued, the court should also take action on any request for the appointment of counsel and any application for the waiver of filing fees and costs of service. See Practice Book §§ 23-25 and 23-26. After the writ has issued, all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29." *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 562–63.

Because of the highly unique and unusual procedural history of the present case, we decline to assign error in the procedure followed by the court. First, we note that the petitioner improperly filed its petition in the judicial district of Tolland. The action was assigned a civil docket number in Tolland before being transferred to the appropriate judicial district. Once properly in the judicial district of Litchfield, the court held status conferences and received and heard oral argument on the petitioner's motion for order. Although that motion sought to have the court issue the writ; see Practice Book § 23-24; the court raised during oral argument the present petition's

duplicity with the first petition. The petitioner's counsel did not object on the basis that consideration of that issue was improper because the court had not yet issued the writ pursuant to Practice Book § 23-24. Moreover, the record contains a status conference memorandum dated November 27, 2018, in which the petitioner argued that the present petition should not be dismissed under Practice Book § 23-29 (3).

Finally, even if we were to assign error in the procedural handling of the present action and to conclude that the court failed to issue the writ prior to its dismissal of the petition pursuant to Practice Book § 23-29, we note that the only remedy available to the petitioner, given the petitioner's lack of standing, would be for this court to remand the matter to the habeas court with direction to decline to issue the writ under Practice Book § 23-24 (a) (1) on the basis that the court lacked jurisdiction. See *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 563.

———————————————