******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# COURTNEY GREEN *v.* COMMISSIONER OF CORRECTION
## (AC 39313)

Alvord, Prescott and Beach, Js.

*Syllabus*

The petitioner, who had been convicted on a plea of guilty of three counts of assault in the first degree, sought a writ of habeas corpus, alleging that he was entitled to certain credits toward his time served under an administrative directive implemented by the respondent, the Commissioner of Correction, pursuant to the commissioner's authority under the statute (§ 18-98e) pertaining to risk reduction earned credits. Specifically, he alleged that, under an agreement he had signed with staff of the Department of Correction, he was eligible to be awarded credit at the rate of five days per month, and that although the commissioner changed the way risk reduction credits are awarded pursuant to a new directive, the petitioner should have been "grandfathered" in to receive credit of five days per month. Pursuant to the rule of practice (§ 23-24) that provides that the habeas court shall issue the writ unless, inter alia, it appears that the court lacks jurisdiction, the habeas court disposed of the petition sua sponte and without a hearing. Thereafter, the court granted the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The petitioner's claim that the habeas court improperly dismissed his habeas petition without holding a hearing was unavailing: the petitioner provided no authority supporting his claim that § 23-24 requires the habeas court to hold a hearing before declining to issue a writ, and § 23-24 does not require the habeas court to hold a hearing prior to concluding that it lacks jurisdiction over the writ, as that rule was intended to permit a habeas court to conduct a preliminary review of a petition prior to further adjudication of the writ to weed out those petitions the adjudication of which would be a waste of precious judicial resources either because the court lacked jurisdiction over it, the petition was wholly frivolous, or it sought relief that the court simply could not grant, and the text of § 23-24 plainly contemplates that the habeas court notify the petitioner of its actions after it reaches a decision on whether the case should proceed further and not before taking such actions; moreover, because requiring the habeas court to appoint counsel for a petitioner and hold a hearing over this class of petitions would constitute a considerable drain of state resources and frustrate the habeas court's ability to focus on those petitions that are worthy of adjudication, this court declined to graft a hearing requirement onto § 23-24 in the absence of language mandating such a procedure.

2. The habeas court properly dismissed the habeas petition for lack of jurisdiction: although the petitioner alleged that he was being deprived of risk reduction credits to which he was entitled, he did not have a constitutionally protected liberty interest in risk reduction credits, as § 18-98e confers broad discretion on the commissioner to award such credits, and there was no basis from which the habeas court could have concluded that the commissioner altered the discretionary nature of the risk reduction credit program by entering into a binding contract with the petitioner, who merely alleged a legal conclusion regarding the existence of a binding contract that was unsupported by any facts alleged in the petition and failed to append the contract to his petition or to cite any language from it demonstrating that he was entitled to receive five days of risk reduction credit per month; moreover, nothing alleged in the petition supported the petitioner's assertion, made for the first time on appeal, that the contract was his offender accountability plan, and even if the petitioner had properly alleged a breach of contract claim against the commissioner, it would not have been sufficient to invoke the habeas court's jurisdiction because the petitioner, at best, had a contractual interest in such credits rather than a constitutionally protected liberty interest, and for the commissioner to have the statutory authority to enter into an agreement with an inmate that strips away the

commissioner's discretion in the future administration of risk reduction credits would contravene the plain language of the statute and the legislature's clear intent that the program be discretionary in nature.

Argued April 24—officially released August 7, 2018

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Oliver, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Nicholas A. Marolda*, assigned counsel, with whom were *Temmy Ann Miller*, assigned counsel, and, on the brief, *Owen R. Firestone*, assigned counsel, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Courtney Green, appeals from the judgment of the habeas court disposing of his petition for a writ of habeas corpus for lack of jurisdiction. On appeal, the petitioner claims that the court improperly disposed of his petition because it (1) incorrectly concluded that it lacked jurisdiction and (2) failed to conduct a hearing on that issue prior to disposing of the petition. We disagree with the claims of the petitioner and, accordingly, affirm the judgment.

We begin by setting forth the relevant procedural history. The petitioner currently is serving a sentence of twenty years of incarceration after pleading guilty on April 21, 2009, to three counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5). On May 11, 2016, the petitioner, representing himself, filed a petition for a writ of habeas corpus.

Therein, the petitioner alleged that on or about August 28, 2011, the respondent, the Commissioner of Correction (commissioner), implemented[1] the Risk Reduction Earned Credit (RREC) program pursuant to his authority under General Statutes § 18-98e.[2] He stated that the "RREC allowed . . . [him] to be awarded time at the discretion of the commissioner . . . at the rate of five days per month for participation in programs or activities [and] good conduct and obedience to departmental rules . . . ." Although the petitioner admitted in his petition that the risk reduction credits were awarded at the commissioner's discretion, he also alleged that he signed an "agreement with department staff" that entitles him to receive five risk reduction credits per month.

The petitioner further alleged that on February 1, 2016, the commissioner sent a memo to inmates informing them that he was changing the way he awarded risk reduction credits pursuant to a new policy outlined in Department of Correction, Administrative Directive 4.2A. The directive provided that, thereafter, the amount of credits an inmate would be eligible to receive each month would be based on the inmate's risk classification—a level four inmate could earn up to three days of credit per month, a level two or three inmate could earn up to four days, and a level one inmate could earn up to five days. Moreover, a level four inmate could apply to have reinstated the additional two credits per month that he was earning previously.

The petitioner further alleged that he continues to be in compliance with the aforementioned "agreement" and, despite the change in policy, should therefore "be grandfathered [in] to receive five days RREC per month, pursuant to . . . § 18-98e." He thus requested the habeas court's intervention and that it "reinstate the RREC of five days per month that [he] signed a contract for . . . ."

On May 19, 2016, the habeas court, *Oliver, J.*, disposed of the petition sua sponte pursuant to Practice Book § 23-24 (a) (1)[3] because the court lacked subject matter jurisdiction over it, citing *Petaway* v. *Commissioner of Correction*, 160 Conn. App. 727, 125 A.3d 1053 (2015), cert. dismissed, 324 Conn. 912, 153 A.3d 1288 (2017). The court did not hold a hearing prior to reaching this determination.

The petitioner subsequently filed a petition for certification to appeal from the court's dismissal of his petition on May 31, 2016. On June 1, 2016, the court granted the petitioner's certification to appeal, as well as the petitioner's application for appointment of counsel. The petitioner timely filed the present appeal on June 15, 2016.

I

We first address the petitioner's claim that the habeas court improperly dismissed his petition because it failed to first hold a hearing on the issue of whether the court had jurisdiction.[4] The petitioner argues that, pursuant to this court's holding in *Boyd* v. *Commissioner of Correction*, 157 Conn. App. 122, 115 A.3d 1123 (2015), the habeas court cannot dismiss a petition sua sponte without fair notice to the petitioner and a hearing. We disagree.

In *Boyd*, this court concluded that it is an abuse of discretion for a habeas court to dismiss a petition sua sponte and without a hearing pursuant to its authority under Practice Book § 23-29 unless the petition "alleges the same grounds for relief sought in a previously denied petition, and fails to allege new facts or evidence . . . ." Id., 125. In the present case, however, unlike in *Boyd*, the court concluded that it lacked jurisdiction over the petition pursuant to its authority under Practice Book § 23-24,[5] rather than Practice Book § 23-29. Thus, we must determine whether Practice Book § 23-24 requires the court to hold a hearing prior to concluding that it lacks jurisdiction over the habeas petition.

This issue presents a question of law subject to plenary review. See *Menard* v. *Willimantic Waste Paper Co.*, 163 Conn. App. 362, 367, 134 A.3d 1248, cert. denied, 321 Conn. 907, 135 A.3d 279 (2016). In determining whether the court was required to hold a hearing, we first consider the language of the provision itself. See *Rivers* v. *New Britain*, 288 Conn. 1, 10–11, 950 A.2d 1247 (2008). Practice Book § 23-24 (a) states: "The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." Practice Book § 23-24 (b) provides: "The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

Thus, there is nothing in the language of Practice Book § 23-24 to require the court to hold a hearing before disposing of the petition for lack of jurisdiction.

In our view, Practice Book § 23-24 is intended to permit a habeas court to conduct a preliminary review of a petition prior to further adjudication of the writ to weed out those petitions the adjudication of which would be a waste of precious judicial resources either because the court lacks jurisdiction over it, the petition is wholly frivolous, or it seeks relief that the court simply cannot grant. We reach this conclusion for two reasons. First, the language of the rule plainly contemplates that the habeas court notify the petitioner of its actions *after* it reaches a decision on whether the case should proceed further. See Practice Book § 23-24 (b). If the rule were intended to impose a hearing requirement, the drafters would undoubtedly have inserted language requiring that the petitioner be notified before the court took such actions.

Second, requiring the habeas court to appoint counsel for a petitioner and hold a hearing over this class of petitions would constitute a considerable drain of state resources and frustrate the habeas court's ability to focus on those petitions that are worthy of adjudication. It is indisputable that the high volume of habeas petitions has been an ongoing source of concern for policymakers and has prompted legislative reforms in recent years. See Public Acts 2012, No. 12-115; 55 H.R. Proc., Pt. 5, 2012 Sess., pp. 1587–91, remarks of Representative Gerald M. Fox III; see also 55 H.R. Proc., supra, p. 1591 ("one of the things that I always thought of when I heard about . . . [habeas corpus reform] is that all parties felt that there was a way to do this better and that there's a way to make sure that we can focus on those claims . . . that do have merit, that are potentially legitimate and weed out those claims that seem to be bogging down the process and using up a lot of resources where the end result, in all likelihood, would be nothing would come of it"). We therefore decline to graft a hearing requirement onto Practice Book § 23-24 in the absence of language mandating such a procedure.[6]

The petitioner has presented no authority on appeal, from either this court or our Supreme Court, interpreting Practice Book § 23-24 as requiring the habeas court to hold a hearing before declining to issue the writ— nor has our review revealed any such authority. In light of the lack of authority to the contrary and the apparent policy reason underlying Practice Book § 23-24, and because the language of Practice Book § 23-24 does not explicitly require the court to hold a hearing before exercising its authority pursuant to that provision, we conclude that the petitioner was not entitled to a hearing in the present case.

II

Next, we address the petitioner's claim that the habeas court improperly dismissed his petition because it incorrectly concluded that it did not have jurisdiction. The petitioner argues that although the award of risk reduction credits ordinarily does not implicate an inmate's liberty interest because of the discretionary nature of the RREC program, he has a contractual right to such credits in this case that vitiates the discretionary nature of the program. He further argues that, because the commissioner's breach of this contract "bears directly on the duration of his sentence," he has invoked the jurisdiction of the habeas court. For the reasons set forth herein, we conclude that the court properly disposed of the petition because it lacked jurisdiction over it.

We begin with the applicable standard of review and relevant legal principles. "Our Supreme Court has long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Pentland* v. *Commissioner of Correction*, 176 Conn. App. 779, 784–85, 169 A.3d 851, cert. denied, 327 Conn. 978, 174 A.3d 800 (2017).

With respect to the habeas court's jurisdiction, "[t]he scope of relief available through a petition for habeas corpus is limited. In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty." (Internal quotation marks omitted.) *Joyce* v. *Commissioner of Correction*, 129 Conn. App. 37, 41, 19 A.3d 204 (2011). In other words, "a petitioner must allege an interest sufficient to give rise to habeas relief." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 368, 163 A.3d 597 (2017). "In order to . . . qualify as a constitutionally protected liberty [interest] . . . the interest must be one that is assured either by statute, judicial decree, or regulation." (Emphasis omitted; internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 144 Conn. App. 375, 378, 71 A.3d 689, cert. denied, 310 Conn. 946, 80 A.3d 907 (2013).

We turn now to the petitioner's claim. At the outset, we note that because this appeal arises from the habeas court's ruling declining to issue the writ pursuant to

Practice Book § 23-24, which is akin to dismissal of the petition "on the basis that the court lacked jurisdiction, we take the facts to be those alleged in the petition, including those facts necessarily implied from the allegations, construing them in favor of the petitioner for purposes of deciding whether the court has subject matter jurisdiction." (Internal quotation marks omitted.) *Vitale* v. *Commissioner of Correction*, 178 Conn. App. 844, 850, 178 A.3d 418 (2017), cert. denied, 328 Conn. 923, 181 A.3d 566 (2018); see also *Pentland* v. *Commissioner of Correction*, supra, 176 Conn. App. 782 ("[i]n deciding whether to sua sponte dismiss the petitioner's habeas petition, the court was required . . . to take the facts to be those alleged in the petition").

The petitioner alleged that he is being deprived of risk reduction credits to which he is entitled, and thereby is being forced to serve a sentence of longer duration. In order to determine whether the court had jurisdiction, therefore, we must decide whether the petitioner has a constitutionally protected liberty interest in the risk reduction credits.

In his petition, the petitioner identified § 18-98e as the source of the commissioner's authority to implement the RREC program. Section 18-98e (a) states that "any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994 . . . *may be eligible* to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, *at the discretion of the Commissioner of Correction* . . . ." (Emphasis added.) Pursuant to § 18-98e, then, an inmate is not guaranteed a certain amount of risk reduction credits per month—or, in fact, any credits at all. Rather, the statute provides only that an inmate *may* be eligible to receive credits if the commissioner so chooses.

The fact that the commissioner is vested with such broad discretion in implementing the RREC program is significant. Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which the commissioner is authorized to award those benefits is discretionary in nature.

For example, in *Abed* v. *Commissioner of Correction*, 43 Conn. App. 176, 682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996), the petitioner filed a habeas petition challenging "the prospective denial of statutory good time credits." Id., 178. Prior to the filing of the petition, the commissioner administered a policy pursuant to which an inmate who was classified as a "safety threat" was precluded from earning good time credits. Id. The commissioner sought dismissal of the petition on the ground that the court lacked jurisdiction because the petitioner failed to raise a legally cognizable claim.

Id., 178–79. The habeas court determined that the petitioner "had a justifiable expectation of earning good time credits based on the plain reading of" General Statutes § 18-7a (c), but disposed of the petition on other grounds. (Internal quotation marks omitted.) Id., 179.

On appeal in *Abed*, this court considered whether "the petitioner ha[d] alleged a liberty interest in good time credits he ha[d] not yet earned so as to raise a legally cognizable claim in his petition." Id., 180. This court reasoned that the petitioner's claim that the habeas court had jurisdiction to consider the merits of his petition "succeed[ed] only if the awarding of good time in Connecticut is mandatory." Id. The plain language of § 18-7a (c), however, provided that "the commissioner *may* award good time credits *at his discretion*." (Emphases altered.) Id. We therefore concluded that "because § 18-7a (c) does not require the commissioner to award good time credits, that section cannot create a liberty interest on which the petitioner may predicate habeas corpus relief." Id., 180–81; see also *Beasley* v. *Commissioner of Correction*, 50 Conn. App. 421, 434, 435, 718 A.2d 487 (1998) (directive that precluded inmate in administrative segregation from earning statutory good time credits was proper use of commissioner's authority; § 18-7a [c] allowed commissioner to award credits at his discretion, so "[t]o conclude otherwise would render the discretionary nature of § 18-7a [c] superfluous"), aff'd, 249 Conn. 499, 733 A.2d 822 (1999).

Our Supreme Court considered a similar claim in *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 357. In that case, the petitioner filed a petition for a writ of habeas corpus challenging a statutory amendment to General Statutes § 54-125a that "eliminated the language [of the earlier version of that statute] that permitted [an inmate's] parole eligibility date to be advanced by the application of any earned risk reduction credit." Id., 365. The habeas court dismissed the petition, finding that it lacked subject matter jurisdiction. Id., 366. On appeal, our Supreme Court concluded that the basis for the court's dismissal was improper but that it nevertheless lacked jurisdiction to consider the merits of the petition for other reasons. Id., 368, 374.

Specifically, our Supreme Court determined in *Perez* that the habeas court lacked jurisdiction because the petitioner did not have a liberty interest in early parole eligibility or risk reduction credits. Id., 370–73. It noted that "parole eligibility under § 54-125a does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction. . . . [T]he decision to grant parole is *entirely within the discretion* of the [Board of Pardons and Paroles]." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 371. It further noted that, "[w]ith respect to the risk reduction credit

previously granted to the petitioner, he overlooks the fact that such credit is not vested in him because it could be rescinded by the [commissioner] at any time in the [commissioner's] discretion for good cause during the petitioner's period of incarceration. The petitioner, in his brief, disputes that the award or revocation of risk reduction credit is wholly discretionary . . . . The petitioner's position, however, is manifestly contradicted by the plain language of § 18-98e (a) . . . . Although the legislature has provided guidance to the [commissioner] as to how to exercise his discretion, the [commissioner] still has broad discretion to award or revoke risk reduction credit. As such, the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded." (Internal quotation marks omitted.) Id., 372; see also *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 734 (petitioner had no liberty interest in early parole eligibility because statute gave commissioner discretion in granting inmates parole).

Thus, as precedent from this court and our Supreme Court makes clear, the petitioner in the present case does not have a liberty interest in risk reduction credits because, as the petitioner himself admitted in his petition, the commissioner has broad discretion to implement the RREC program. The petitioner fails on appeal to set forth any persuasive authority that rebuts this conclusion.[7] Instead, his sole argument is that the commissioner somehow altered the discretionary nature of the RREC program by entering into a binding contract with the petitioner, pursuant to which he is entitled to receive five days of risk reduction credit per month. We disagree.

To begin, we note that "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and, when it does not interfere with the rights of the other parties, to construe the rules of practice liberally in favor of the [self-represented] party." (Internal quotation marks omitted.) *Vitale* v. *Commissioner of Correction*, supra, 178 Conn. App. 850. The petition for a writ of habeas corpus, however, is still "essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . [T]he habeas court . . . does not have the discretion to look beyond the pleadings . . . ." (Internal quotation marks omitted.) Id., 851. Moreover, although the habeas court must accept all well pleaded facts as true, it "need not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) *Coleman* v. *Commissioner of Correction*, 137 Conn. App. 51, 56, 46 A.3d 1050 (2012).

The petitioner's assertion that the agreement he was referring to in his petition constitutes a binding contract is a legal conclusion unsupported by any facts alleged in the petition. The petitioner failed to identify the alleged contract, attach it to the petition for the court's consideration, or cite any language from it that would demonstrate that he is entitled to receive five days of risk reduction credit per month. Thus, there was no basis from which the court could have concluded that the agreement was a binding contract.

The petitioner argues for the first time on appeal that the agreement he referenced in his petition is his Offender Accountability Plan (OAP) and that his OAP is a contract.[8] Again, nothing in the petition supports this assertion—the petitioner never once referenced his OAP or attached it to the petition for the court's consideration. Likewise, he has failed to set forth any authority on appeal that would support the conclusion that an OAP is a contract.

Moreover, even if the petitioner had properly alleged a breach of contract claim against the commissioner, it would not have been enough to invoke the habeas court's jurisdiction because the petitioner, at best, has a contractual interest in such credits rather than a constitutionally protected liberty interest. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 372 (The commissioner "has broad discretion to award or revoke risk reduction credit. As such, the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded.").

Finally, we doubt that the commissioner has the statutory authority to enter into an agreement with an inmate that strips the commissioner of his discretion in the future administration of the RREC program. Such action would contravene the plain language of the statute and frustrate the legislature's clear intent that the RREC program be discretionary in nature. See *Beasley* v. *Commissioner of Correction*, supra, 50 Conn. App. 435. Thus, for all the reasons stated herein, we conclude that the court properly disposed of the habeas petition for lack of jurisdiction.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner did not indicate in his petition the manner in which the RREC program was implemented. He appears to allege that it was implemented through Administrative Directive 4.2 (A) (3), although he did not attach any such directive either to his petition or brief on appeal.

[2] Although § 18-98e was the subject of technical amendments in 2018; see Public Acts 2018, No. 18-155, § 3; those amendments have no bearing on the merits of this appeal. For purposes of clarity, we refer to the current revision of the statute.

[3] Practice Book § 23-24 is titled "Preliminary Consideration of Judicial Authority" and provides in subsection (a) that the habeas court "shall promptly review any petition for a writ of habeas corpus to determine whether the writ shall issue. The judicial authority shall issue the writ unless

it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." If the court declines to issue the writ, it must notify the petitioner. Practice Book § 23-24 (b).

Although the habeas court stated in its brief order that it was dismissing the petition, it explicitly relied upon Practice Book § 23-24 in doing so. Because that provision authorizes the habeas court to decline to issue the writ for lack of jurisdiction, we construe the court's disposition of the petition to be a decision to decline to "issue the writ." The meaning of that phrase can be ascertained by reference to historical practices regarding the service and issuance of writs of habeas corpus in our state. At one point in time, a habeas petition was filed with the court prior to it being served on the commissioner. General Statutes (1918 Rev.) § 6033. The court would then determine whether to issue the writ. General Statutes (1918 Rev.) § 6033. It was only if the court decided to issue the writ that the petition would be served on the commissioner by an officer of the court and a subsequent habeas trial be held. General Statutes (1918 Rev.) § 6033; see also *Adamsen* v. *Adamsen*, 151 Conn. 172, 176, 195 A.2d 418 (1963) ("Our statute requires that the application for a writ of habeas corpus shall be verified by the affidavit of the applicant for the writ alleging that he verily believes the person on whose account such writ is sought is illegally confined or deprived of his liberty. . . . The only purpose served by the application is to secure the issuance of the writ in the discretion of the court. The issues on which any subsequent trial is held are framed by the return and the pleadings subsequent thereto." [Citation omitted; internal quotation marks omitted.]). Put differently, "[t]he issuance of the writ did not determine the validity of the [petition] . . . . On the contrary, it served only to bring the parties before the court in order that the issue of the alleged illegal restraint might be solved." *Adamsen* v. *Adamsen*, supra, 177.

[4] For clarity and ease of analysis, we address the petitioner's claims in a different order than they are set forth in his brief. See *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 311 n.8, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018).

[5] The petitioner argues that Practice Book § 23-24 does not allow the habeas court to enter a judgment of dismissal. It is true that § 23-24 authorizes the court to "decline to issue the writ," rather than dismiss the petition, if it concludes, among other things, that it lacks jurisdiction. The court's decision to refrain from issuing the writ, however, is the functional equivalent of a dismissal of the petition. Thus, we disagree with the petitioner that the court's action was improper. See footnote 3 of this opinion.

[6] Although we conclude that the habeas court was not required to hold a hearing before disposing of the petition in the present case, we urge the habeas court to exercise this authority sparingly and limit its use to those instances in which it is plain and obvious that the writ should not issue under Practice Book § 23-24.

[7] The petitioner relies on *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 427 (1971), for the proposition that the state must honor a contract that it enters into with an inmate. We disagree that *Santobello* compels such a determination in the present case. The United States Supreme Court in *Santobello* considered a prosecutor's obligation to honor a plea agreement with a criminal defendant, and the decision reached by the court depended largely on the unique responsibilities of a prosecutor and the fairness considerations relevant to that stage of a criminal proceeding. Id., 257–61. The present case, by contrast, presents a completely different procedural posture. Moreover, neither concern considered by the court in *Santobello* dictates our resolution of the petitioner's claim. Thus, *Santobello* is inapposite.

[8] The petitioner failed to include his OAP in his appendix to his appellate brief. The commissioner, however, included a blank OAP in his appendix. Our review of the blank OAP reveals that it is a form, signed by an inmate, that designates the specific programs that the inmate should participate in during his or her period of incarceration in order to avoid negatively impacting the inmate's earning of risk reduction credits, chances of obtaining supervised community release, or being granted parole. Although it notes that "[f]ailure to comply with the OAP recommendations . . . shall negatively impact your earning of Risk Reduction Earned Credit," it does not specify that the inmate will otherwise receive five days of risk reduction credit per month.

[9] The petitioner also argues that *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 727, which the court cited in its short judgment of

dismissal, does not support the court's conclusion that it lacked jurisdiction. It is true that the resolution of the appeal in *Petaway* turned on the fact that the petitioner did not have a liberty interest in parole eligibility, rather than risk reduction credits. Id., 734. The court in *Petaway*, however, concluded that the reason the petitioner did not have a liberty interest is that the relevant statutory scheme gave the commissioner discretion to determine parole eligibility. Id. Likewise, § 18-98e gives the commissioner discretion to award risk reduction credits, which dictates that the petitioner in the present case does not have a liberty interest in the credits. *Petaway* therefore supports the conclusion that the court lacked jurisdiction to consider the merits of the petition.

———————————————————