******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY GILCHRIST *v.* COMMISSIONER
OF CORRECTION
(SC 20141)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Kahn and Ecker, Js.

*Syllabus*

Pursuant to the rules of practice (§ 23-24), once a petition for a writ of
habeas corpus is filed in the Superior Court, "[t]he judicial authority
shall promptly review [the] petition . . . to determine whether the writ
should issue. The judicial authority shall issue the writ unless it appears
that . . . the court lacks jurisdiction . . . the petition is wholly frivo-
lous on its face . . . or . . . the relief sought is not available."

Pursuant further to the rules of practice (§ 23-29), "[t]he judicial authority
may, at any time, upon its own motion or upon motion of the respondent,
dismiss the petition . . . if it determines [inter alia] that . . . the court
lacks jurisdiction . . . [or] the petition . . . fails to state a claim upon
which habeas corpus relief can be granted . . . ."

The petitioner, who had been convicted, on a guilty plea, of the crime of
robbery in the third degree, filed a petition for a writ of habeas corpus,
seeking to withdraw his guilty plea and to have his conviction vacated
or dismissed. The petitioner alleged that he had received a sentence of
unconditional discharge in connection with the robbery conviction but
that he remained incarcerated on unspecified other charges and that
the robbery conviction was adversely affecting his eligibility for parole
on the other charges. The habeas court granted the petitioner's applica-
tion for a waiver of fees but took no action as to his request for the
appointment of counsel. Shortly thereafter, however, the court, sua
sponte and without providing the petitioner with notice or an opportunity
to be heard, dismissed the petition pursuant to Practice Book § 23-29
on the ground that the habeas court lacked jurisdiction because the
petitioner was not in custody for the conviction that he was challenging
at the time he filed the petition. On the granting of certification, the
petitioner appealed to the Appellate Court, which affirmed the habeas
court's judgment, and the petitioner, on the granting of certification,
appealed to this court, claiming that the habeas court improperly dis-
missed the petition without first acting on his request for the appoint-
ment of counsel and providing him with notice and an opportunity to
be heard. *Held* that, although the Appellate Court correctly concluded
that the petitioner was not entitled to the appointment of counsel, notice
or a hearing under the circumstances, that court improperly upheld the
habeas court's dismissal of the habeas petition under § 23-29 because
that dismissal occurred before the habeas court ordered the issuance
of the writ pursuant to § 23-24, and the habeas court, upon preliminary
review of the petition, should have declined to issue the writ under § 23-
24 for lack of jurisdiction rather than dismissing the petition pursuant
to § 23-29: upon review of the historical development of the writ of
habeas corpus, the language of §§ 23-24 and 23-29, and the relationship
of those sections to the provisions generally governing habeas corpus
procedure (§ 23-21 et seq.) set forth in the Practice Book, this court
concluded that a dismissal under § 23-29 may not precede the habeas
court's determination to issue the writ of habeas corpus under § 23-24,
as that rule dictates the procedure by which the judicial authority must
conduct a preliminary review of the petition, prior to commencement
of the habeas action through issuance of the writ, to determine whether
the petition is patently defective because the court lacks jurisdiction,
the petition is wholly frivolous on its face, or the relief sought is not
available, and § 23-24 expressly requires the court to issue the writ if
its initial review does not result in a decision to decline to issue the
writ on the basis of one or more grounds enumerated in § 23-24, whereas
§ 23-29 contemplates the dismissal of a habeas petition only after the
writ has issued and the habeas action has commenced; accordingly,
because the habeas court dismissed the habeas petition for lack of
jurisdiction under § 23-29, even though it did so in its preliminary consid-

eration of the petition under § 23-24 and before issuing the writ of habeas corpus initiating the habeas proceeding, and, because it was undisputed that the petitioner would not have been entitled to the appointment of counsel, notice or an opportunity to be heard in connection with the habeas court's decision to decline to issue the writ, the judgment of the Appellate Court was reversed and the case was remanded to that court for remand to the trial court with direction to decline to issue the writ of habeas corpus.

Argued September 16, 2019—officially released January 28, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Oliver, J.*, dismissed the petition and rendered judgment thereon, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *Prescott, Elgo* and *Harper, Js.*, which affirmed the judgment of the habeas court, and the petitioner, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Adele V. Patterson*, senior assistant public defender, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

ECKER, J. This appeal requires us to clarify the proper procedure to be used by the habeas court in its preliminary consideration of a petition for a writ of habeas corpus under Practice Book §§ 23-24[1] and 23-29.[2] In 2016, the petitioner, Anthony Gilchrist, filed a pro se petition for a writ of habeas corpus, seeking to withdraw the guilty plea he entered in September, 2013, to a charge of robbery in the third degree and to have the corresponding judgment of conviction "vacate[d] and/or dismiss[ed]." The habeas court, acting sua sponte and without providing the petitioner with notice or a hearing, dismissed the petition pursuant to § 23-29 (1) for lack of jurisdiction on the ground that it was apparent, on the face of the petition, that the petitioner was not in custody for the conviction being challenged. The Appellate Court affirmed the habeas court's judgment. *Gilchrist* v. *Commissioner of Correction*, 180 Conn. App. 56, 58, 182 A.3d 690 (2018). On appeal, the petitioner claims that the habeas court improperly dismissed the petition without first acting on his request for the appointment of counsel and providing him with notice and an opportunity to be heard. Although we agree with the Appellate Court that the petitioner was not entitled to the appointment of counsel, notice or a hearing under the circumstances, we disagree with the analysis that it used to arrive at that conclusion and, therefore, reverse the judgment of the Appellate Court and remand the case to that court with direction to render judgment in accordance with this opinion.

The following facts and procedural history are relevant to this appeal. On June 24, 2016, the self-represented petitioner filed a petition for a writ of habeas corpus. He included with the petition a request for the appointment of counsel and an application for a waiver of fees. The petition states that he had pleaded guilty to robbery in the third degree in September, 2013, and received a sentence of unconditional discharge. The petition and the attachments thereto also indicate that the petitioner was not incarcerated on the robbery conviction challenged in his habeas petition but that he remains incarcerated on other charges, the nature of which is not clear from the record. It appears from the petition that the petitioner's effort to obtain habeas relief stemmed from the fact that his expired robbery conviction made him ineligible for parole until he serves 85 percent of his definite sentences for the "other" charges pursuant to General Statutes § 54-125a (b) (2) (B).[3]

On July 21, 2016, the habeas court assigned a docket number to the petition and granted the petitioner's application for a waiver of fees but took no action on his request for the appointment of counsel. One week later, on July 28, 2016, the habeas court, sua sponte and without providing the petitioner with notice or an

opportunity to be heard, rendered a judgment of dismissal, stating: "The habeas corpus petition is dismissed because the court lacks jurisdiction pursuant to . . . Practice Book § 23-29 (1), as the petitioner was no longer in custody for the conviction being challenged at the time the petition was filed."[4] For the reasons that soon will become apparent, it is significant that the habeas court disposed of the petition pursuant to Practice Book § 23-29 rather than Practice Book § 23-24 and did so prior to issuing the writ that would have operated to commence the habeas action.

Following the judgment of dismissal, the petitioner filed a motion to reconsider, which the habeas court summarily denied on August 18, 2016. The habeas court thereafter granted the petitioner's petition for certification to appeal. The Appellate Court affirmed the habeas court's judgment. *Gilchrist* v. *Commissioner of Correction*, supra, 180 Conn. App. 58. We granted the petitioner's petition for certification to appeal to determine whether the Appellate Court properly affirmed the judgment of the habeas court dismissing the petition pursuant to Practice Book § 23-29 (1), without the habeas court's taking any action on the petitioner's request for the appointment of counsel or providing the petitioner with notice and an opportunity to be heard on the court's own motion to dismiss. *Gilchrist* v. *Commissioner of Correction*, 329 Conn. 908, 186 A.3d 13 (2018).

Upon review of the record, we now conclude that the certified question is not an accurate statement of the issue presently before us. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191–92, 884 A.2d 981 (2005) (court may reframe certified question to more accurately reflect issues presented). Because it is clear from the record that the habeas court dismissed the petition before ordering the issuance of the writ, a more fundamental issue controls our review, namely, whether dismissal under Practice Book § 23-29 can precede the habeas court's determination to issue the writ under Practice Book § 23-24. Accordingly, we revise the certified question as follows: "Did the Appellate Court properly affirm the habeas court's dismissal of the petition under . . . § 23-29 when that dismissal occurred before the habeas court ordered the issuance of the writ pursuant to . . . § 23-24?" We answer the question in the negative.

Whether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary. See *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 559, 153 A.3d 1233 (2017) (plenary review of dismissal under Practice Book § 23-29 [2]); *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 566, 941 A.2d 248 (2008) (conclusions reached by habeas court in dismissing habeas petition are matters of law subject to plenary review). Plenary review also is appropriate because this appeal

requires us to interpret the rules of practice. See, e.g., *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

There is understandable confusion in our courts regarding the proper procedure to be followed in the preliminary stages of review once a petition for a writ of habeas corpus is filed in the habeas court. The immediate source of the confusion is the apparent similarity and overlap between Practice Book §§ 23-24 and 23-29, each of which permits the habeas court to dispose of the habeas petition on the basis of various pleading deficiencies. Practice Book § 23-24 (a) allows the court to "[decline to] issue the writ" if it appears that "(1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." Practice Book § 23-29, using similar but not identical terms, allows the court to "dismiss the petition," on the court's own motion or the motion of the respondent, if the court determines that "(1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists."

Although the existence of different provisions normally indicates an intention to address different concerns or circumstances; see *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 315–16, 819 A.2d 260 (2003); the common ground covered by these two rules of practice makes it difficult to identify precisely their respective spheres of operation. A number of recent cases demonstrate the confusion. See *Nonhuman Rights Project, Inc.* v. *R.W. Commerford & Sons, Inc.*, 192 Conn. App. 36, 38 n.1, 216 A.3d 839 (construing habeas court's "dismiss[al]" of petition for writ of habeas corpus under Practice Book § 23-24 [a] [1] as decision to decline to issue writ under that provision), cert. denied, 330 Conn. 920, 217 A.3d 635 (2019); *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 336, 199 A.3d 1127 (2018) (stating that habeas court "dismissed" petition for writ of habeas corpus under § 23-24 [a] [1]), petition for cert. filed (Conn. January 4, 2019) (No. 180305); *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 80 n.3, 194 A.3d 857 (construing "dismiss[al]" under § 23-24 as decision to decline to issue writ), cert. denied, 330 Conn. 933, 195 A.3d 383 (2018); see also *Boria* v. *Commissioner of Correction*, supra, 356–64 (*Bishop, J.*, concurring) (summarizing confusion surrounding, and inconsistent treatment of, Practice Book §§ 23-24 and 23-29 and citing illustrative cases).

The present case provides an occasion to clarify the

proper application of these two rules of practice. The confusion is not merely a function of the overlapping terms and proximate spheres of operation. At a deeper level, it emerges out of the combined effect of the unusual procedure used to initiate a habeas proceeding and the somewhat antiquated terminology used to describe aspects of that procedure. Our understanding is not made any easier by the ancient origin and protean nature of the " 'great writ . . . .' " *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 757, 12 A.3d 817 (2011); see id. (tracing origins of "[t]he 'great writ' " to thirteenth century England); G. Longsdorf, "Habeas Corpus: A Protean Writ and Remedy," 8 F.R.D. 179, 180–90 (1948) (describing numerous substantive and procedural changes to writ of habeas corpus over time).

One of the significant procedural differences between an ordinary civil action and a habeas corpus action involves the manner by which the case is commenced. Generally, "[a] habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions"; (internal quotation marks omitted) *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 782, 167 A.3d 952 (2017); but specialized procedural rules accompany numerous aspects of a habeas case. See Practice Book § 23-21 et seq. These specialized procedures include the steps necessary to commence a habeas action in Connecticut. In an ordinary civil lawsuit, the writ of summons[5] and complaint are signed by an attorney (or, in the case of an unrepresented nonattorney litigant, by a court clerk) without any preliminary review by a judge, and the action is considered commenced under Connecticut law when a defendant is duly served, before the process is ever filed with the court.[6]

Habeas actions work differently. *Before* the petition is served on the respondent, the petitioner is required to file the petition in court for review by a judge. The current review procedure is set forth in Practice Book § 23-24 (a), which requires the judicial authority to "promptly review any petition for a writ of habeas corpus to determine *whether the writ should issue.*" (Emphasis added.) The rule goes on to instruct that "[t]he judicial authority shall issue the writ unless it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." Practice Book § 23-24 (a). If any of these three enumerated circumstances exist, then the writ never issues in the first place, and the judicial authority is required to "notify the petitioner [that] it declines to issue the writ." Practice Book § 23-24 (b). Section 23-24 thus reverses the usual sequence followed in the ordinary civil case; the habeas petition first is filed with the court, and the writ issues and service of process occurs only if the court determines, after a preliminary review of the petition, that the petition

pleads a nonfrivolous claim within the court's jurisdiction upon which relief can be granted.[7]

The preliminary review of the habeas petition by a judge pursuant to Practice Book § 23-24, prior to the issuance of the writ, is a procedure with deep common-law roots. See 1 Z. Swift, A Digest of the Laws of the State of Connecticut (1822) p. 569 ("[i]n England th[e] writ may be issued by the courts of Westminster [H]all, or any of the judges in vacation, and is considered as demandable ex debito justitiae,[8] with this limitation, if on the face of the application, or facts stated, there appears to be no ground for interference, it may be denied" [footnote added]); see also 2 R. Bollier & S. Busby, Stephenson's Connecticut Civil Procedure (3d Ed. 2002) § 221 (b), p. 548. ("As with all of the extraordinary writs, the essence of the procedure is that the writ does not issue '[as a matter] of course.' Application must be made and cause must be shown for the issuance of the writ."); 2 R. Bollier & S. Busby, supra, § 221 (d), p. 550 ("[t]he petition is essentially a pleading, the only purpose of which is to secure the issuance of the writ; the confinement itself will be tested on issues raised by subsequent pleadings" [footnote omitted]). An earlier version of Stephenson's Connecticut Civil Procedure puts the matter even more clearly: "An application for a writ of habeas corpus is presented to the court or a judge thereof. Since no notice of the application is given [to] the [respondent], the hearing[9] is ex parte. The [respondent] is not prejudiced by this absence of notice. In other actions, the writ can be issued by the [petitioner's] attorney. In habeas corpus, the [respondent] is better protected by requiring the petitioner to satisfy a judge that the writ should issue. Notice is given thereafter." (Footnote added; footnote omitted.) 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. Cum. Supp. 1981) § 259 (f), p. 1066.

The decisional law is in accord, in Connecticut and elsewhere. See, e.g., *Adamsen* v. *Adamsen*, 151 Conn. 172, 176, 195 A.2d 418 (1963) ("The only purpose served by the application is to secure the issuance of the writ in the discretion[10] of the court. The issues on which any subsequent trial is held are framed by the return and the pleadings subsequent thereto." [Footnote added.]); *McPheters* v. *Pollard*, 146 Conn. 509, 510, 152 A.2d 632 (1959) (when "[a]ffirmative allegations showing the deprivation of the [petitioner's] legal rights in this state, essential to the issuance of a writ, are lacking," this "raises considerable doubt that the writ should have issued"); *Green* v. *Commissioner of Correction*, supra, 184 Conn. App. 80 n.3 (historically, "[i]t was only if the court decided to issue the writ that the petition would be served on the [C]ommissioner [of Correction] by an officer of the court and a subsequent habeas trial be held"); see also *Walker* v. *Johnston*, 312 U.S. 275, 284, 61 S. Ct. 574, 85 L. Ed. 830 (1941) ("[I]f, upon the face of the petition, it appears that the party is not entitled

to the writ, the court may refuse to issue it. Since the allegations of such petitions are often inconclusive, the practice has grown up of issuing an order to show cause, which the respondent may answer. By this procedure the facts on which the opposing parties rely may be exhibited, and the court may find that no issue of fact is involved. In this way useless grant of the writ with consequent production of the prisoner and of witnesses may be avoided . . . ."); *In re Durrant*, 169 U.S. 39, 43, 18 S. Ct. 291, 42 L. Ed. 653 (1898) ("the writ of habeas corpus . . . must be denied . . . if it [is] apparent that the only result, if the writ were issued, would be the remanding of the petitioner to custody"); *Ex parte Watkins*, 28 U.S. (3 Peters) 193, 201, 7 L. Ed. 650 (1830) (refusing to issue writ of habeas corpus when it "is shown as fully by the petitioner as it could appear on the return of the writ" that court lacked jurisdiction); *Engels* v. *Amrine*, 125 P.2d 379, 380 (Kan. 1942) ("[i]t is the practice in this state to make a preliminary determination as to the propriety of issuing the writ of habeas corpus"); *In re Thompson*, 85 N.J. Eq. 221, 249, 96 A. 102 (1915) ("[H]abeas corpus falls strictly within the definition of a prerogative writ, namely, one that does not issue as of right but at the discretion of the court, that is, one that has to be allowed by the court or a judge thereof in the exercise of a sound judicial, and not an arbitrary, discretion. Of course habeas corpus is a writ of right when cause appears for its issuance, but cause must always be shown.").

To be clear, the screening function of Practice Book § 23-24 plays an important role in habeas corpus proceedings, but it is intended only to weed out obviously and unequivocally defective petitions, and we emphasize that "[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims." *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994). Screening petitions prior to the issuance of the writ is intended to conserve judicial resources by eliminating obviously defective petitions; it is not meant to close the doors of the habeas court to justiciable claims. "Special considerations ordinarily obtain when a petitioner has proceeded pro se. . . . [I]n such a case, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed. . . . The justification for this policy is apparent. If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners." (Internal quotation marks omitted.) *Galland* v. *Bronson*, 204 Conn. 330, 334, 527 A.2d 1192 (1987). Thus, when borderline cases are detected in the preliminary review under § 23-24, the habeas court should issue the writ and appoint counsel so that any potential deficiencies can be

addressed in the regular course after the proceeding has commenced.

With this background in mind, we now are better equipped to discern the differences between Practice Book §§ 23-24 and 23-29. The former rule applies to the court's preliminary review of the petition prior to the issuance of the writ of habeas corpus and before commencement of a habeas action. Pursuant to Practice Book § 23-24 (a), the habeas court must "promptly review any petition for a writ of habeas corpus to determine whether the writ should issue." The habeas court may decline to issue the writ if—and only if—it determines that "(1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." Practice Book § 23-24 (a). If the court declines to issue the writ, no further action is necessary beyond notifying the petitioner because there is no service of process, no civil action and, accordingly, no need for the appointment of counsel.

In contrast, Practice Book § 23-29 contemplates the dismissal of a habeas petition after the writ has issued on any of the enumerated grounds. It serves, roughly speaking, as the analog to Practice Book §§ 10-30 and 10-39, which, respectively, govern motions to dismiss and motions to strike in civil actions. It is true that § 23-29 states that the judicial authority may take action under its authority "at any time," but the "time" it references necessarily is defined by the time at which the rule itself becomes operative, which is after the habeas court issues the writ and the action has commenced. The rules of practice were promulgated to create a harmonious body of law, and we are required to "read statutes [and rules] together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute [or rule] . . . we look not only at the provision at issue, but also to the broader statutory [or Practice Book] scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008). The rules of practice governing habeas corpus proceedings; see Practice Book § 23-21 et seq.; clearly evince an order of operations, providing for procedures and motions in the sequence in which they generally occur in a typical habeas case.[11] Practice Book § 23-24 is situated at the beginning of the sequence, preceded only by two substantive sections addressing the required contents of a habeas petition, because that section addresses the very first step in any habeas case, which is the preliminary review of the petition undertaken prior to the issuance of the writ. In contrast, § 23-29 comes later, after provisions governing the waiver of fees and costs of service, the appointment of counsel, venue, and change of venue. See Practice Book §§ 23-25 through 23-28.

To summarize, when a petition for a writ of habeas corpus alleging a claim of illegal confinement is submitted to the court, the following procedures should be followed. First, upon receipt of a habeas petition that is submitted under oath and is compliant with the requirements of Practice Book § 23-22; see Practice Book §§ 23-22 and 23-23; the judicial authority must review the petition to determine if it is patently defective because the court lacks jurisdiction, the petition is wholly frivolous on its face, or the relief sought is unavailable. Practice Book § 23-24 (a). If it is clear that any of those defects are present, then the judicial authority should issue an order declining to issue the writ, and the office of the clerk should return the petition to the petitioner explaining that the judicial authority has declined to issue the writ pursuant to § 23-24. Practice Book § 23-24 (a) and (b). If the judicial authority does not decline to issue the writ, then it must issue the writ, the effect of which will be to require the respondent to enter an appearance in the case and to proceed in accordance with applicable law. At the time the writ is issued, the court should also take action on any request for the appointment of counsel and any application for the waiver of filing fees and costs of service. See Practice Book §§ 23-25 and 23-26. After the writ has issued, all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29.

The record in the present case reflects that the habeas court dismissed the petition for lack of jurisdiction under Practice Book § 23-29 (1), even though the court did so in its preliminary consideration of the petition under Practice Book § 23-24, prior to the issuance of the writ. For this reason, the habeas court should have declined to issue the writ pursuant to § 23-24 (a) (1) rather than dismissing the case pursuant to § 23-29 (1). Because it is undisputed that the petitioner is not entitled to the appointment of counsel or notice and an opportunity to be heard in connection with the court's decision to decline to issue the writ, this concludes our review.[12]

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to remand the case to the habeas court with direction to decline to issue the writ of habeas corpus.

[1] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction;

"(2) the petition is wholly frivolous on its face; or

"(3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[2] Practice Book § 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction;

"(2) the petition, or a count thereof, fails to state a claim upon which

habeas corpus relief can be granted;

"(3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition;

"(4) the claims asserted in the petition are moot or premature;

"(5) any other legally sufficient ground for dismissal of the petition exists."

[3] General Statutes § 54-125a (b) (2) provides in relevant part that "[a] person convicted of . . . (B) an offense . . . where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole . . . until such person has served not less than eighty-five per cent of the definite sentence imposed."

[4] The petitioner does not challenge the merits of the habeas court's ruling. See, e.g., *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 532, 876 A.2d 1178 (2005) (habeas court lacked jurisdiction over petition challenging conviction for which petitioner was no longer in custody), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014).

[5] The writ of summons used to commence a civil action in Connecticut commands the officer to whom it is directed, typically a state marshal, to (1) summon the defendant(s) to appear in the designated Superior Court within the designated time period, (2) make service on the defendant(s) of a true copy of the writ and accompanying complaint and/or other process, and (3) return the original process with the process server's "actions thereon" to the issuing party for return to the court. See General Statutes § 52-45b (providing usual forms of legal process for commencement of civil actions); see also *Hartley* v. *Vitiello*, 113 Conn. 74, 79, 154 A. 255 (1931) ("[u]nder our law, with very limited exceptions, process in civil actions can . . . be served [only] by certain designated officers to whom it must be addressed . . . [and] the officer making the service must [e]ndorse his doings upon the writ and complaint and return it to court a certain number of days before the return day"); 1 R. Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) §§ 15 through 17, pp. 26–35 (explaining service of process in civil actions).

[6] See, e.g., *Rocco* v. *Garrison*, 268 Conn. 541, 549, 848 A.2d 352 (2004) ("under the law of our state, an action is commenced not when the writ is returned but when it is served upon the defendant" [footnote omitted; internal quotation marks omitted]); *Rana* v. *Ritacco*, 236 Conn. 330, 337, 672 A.2d 946 (1996) ("[t]his court has long held that an action is brought once the writ, summons and complaint have been served upon a defendant"); see also General Statutes § 52-45a ("[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment"); General Statutes § 52-50 (entitled "Persons to whom process shall be directed"); Practice Book § 8-1 (entitled "Process"). In the usual course, an attorney will sign and issue the writ of summons and complaint without any court involvement. If the plaintiff is not an attorney and not represented by counsel, a court clerk must sign the writ of summons, but the clerk conducts no jurisdictional or merits related review and has no discretion to refuse to sign the writ "unless it is defective as to form . . . ." Practice Book § 8-1 (a). A different procedure, sometimes requiring preliminary review by a judicial authority prior to the service of process, may be necessary in actions initiated by an order to show cause.

[7] The terminological confusion mentioned previously derives in part from the unusual procedure just described. The "petition" submitted to the court for preliminary review is more accurately described as an application for issuance of the writ. Indeed, General Statutes § 52-466, which governs the litigation of the writ as a civil matter, though otherwise unhelpful in resolving the particular procedural issue presently before this court, refers to an "application for a writ of habeas corpus" rather than a "petition." The confusion also may result from the fact that the "writ" sought by the application, although called a "writ of habeas corpus," functions essentially as a writ of summons in that it commands the marshal to summon the respondent, who has custody of the petitioner, to appear and show cause why the petition should not be granted. Unless otherwise indicated, we use the term "writ" in this opinion to refer to the writ issued by the court to initiate the habeas proceeding rather than the ultimate relief sought by the great writ, i.e., the release of the prisoner from custody.

[8] Ex debito justitiae means "[f]rom or as a debt of justice; in accordance with the requirement of justice; of right; as a matter of right." Black's Law Dictionary (11th Ed. 2019) p. 713.

[9] Although the term "hearing" is used here, the author undoubtedly refers

to the judge's preliminary review, conducted ex parte.

[10] Use of the word "discretion" in this context should not be misunderstood. Historically, courts and commentators, in Connecticut and elsewhere, sometimes referred to the court's "discretion" to issue the writ as a means of describing the preliminary review of the petition for defects apparent on its face. In the absence of such a defect, the court is required to issue the writ as of right. In his treatise on habeas corpus law and remedies, Judge William F. Bailey gives the following explanation: "The rule is that a person restrained of his liberty is entitled as a matter of right to the writ, *upon presentation to the proper officer or tribunal of his petition showing proper ground therefor*. The expression has been used that the officer or tribunal has a discretion which he may exercise in the matter. With the exception that the federal courts in cases of application to them to inquire into the legality of the custody of a person held under state authority, where such courts may . . . await the final action of the state court before issuing the writ . . . the duty to issue the writ *where there appears sufficient grounds therefor*, is absolute." (Emphasis added; footnote omitted.) 1 W. Bailey, A Treatise on the Law of Habeas Corpus and Special Remedies (1913) § 5, p. 13.

[11] The rules of practice demonstrate a similar order of operations for ordinary civil actions. The provisions in chapter 10, "Pleadings," deal serially with general rules for pleading, service of process, the plaintiff's complaint, motions to dismiss, requests to revise, motions to strike, the defendant's answer, subsequent pleadings, and amendments to pleadings. Although not dispositive of our interpretation of the rules of practice, we see no reason to read this ordering as inadvertent, either in the case of habeas proceedings or ordinary civil actions.

[12] The immediate significance of our holding is purely a matter of form and may appear hypertechnical. Technical matters of form, however, will sometimes have meaningful consequences, and it is important to employ the correct terminology and procedures when disposing of a writ of habeas corpus.